STATE OF MAINE

*vs.*

MAURICE SIMON

Kennebec.   Opinion, October 14, 1953.

*Alexander A. LaFleur, Atty. Gen.,*
*James Archibald,*
*Harold J. Rubin,* for State.

*Goodspeed & Goodspeed,*
*Albert Knudsen,* for defendant.

SITTING: MERRILL, C. J., THAXTER, FELLOWS, WILLIAMSON, TIRRELL, JJ., MURRAY, A. R. J.

WILLIAMSON, J.   This case is before us on exceptions to the overruling in the Superior Court of the defendant's demurrer to an indictment charging the attempted bribery of the Governor under R. S., Chap. 122, Sec. 5.  The exceptions are overruled.

The statute, insofar as it is here material, follows:

> "Whoever gives, offers, or promises to an executive, legislative, or judicial officer, before or after he is qualified or takes his seat, any valuable consideration or gratuity whatever, or does, offers, or promises to do any act beneficial to such officer, with intent to influence his action, vote, opinion, or judgment in any matter pending, or that may come legally before him in his official capacity, shall be punished . . ."

The indictment is in eight counts based upon facts arising from one transaction.  For convenience we may consider that there are four counts, for each even numbered count

differs from the preceding count only in the substitution of the phrase "to cause to be paid to" for the phrase "to pay to."

The four counts are alike to the point indicated below:

"THE GRAND JURORS FOR SAID STATE, upon their oath present, that Maurice Simon, of Brookline in the County of Norfolk and Commonwealth of Massachusetts on the 20th day of April in the year of our Lord one thousand nine hundred fifty-three at Augusta in said County of Kennebec, did then and there feloniously and corruptly offer to one Burton M. Cross, the said Burton M. Cross being then and there to the knowledge of the said Maurice Simon an executive officer of the State of Maine, to wit: the duly elected and legally qualified Governor of the State of Maine, to do a certain act beneficial to the said Burton M. Cross, to wit, to pay to the said Burton M. Cross a certain sum of money, to wit, one-quarter of a cent per gallon of all of the total gallonage of a certain highway surfacing material to be purchased and used thereafter during the year 1953 by the State of Maine for the surface treatment of highways within the State of Maine, said material being known as "Rode-Rite" treated cut-back inverted emulsified asphalt, . . ."

The counts then read:

FIRST and SECOND counts: "with intent then and there to influence the action of the said Burton M. Cross in a matter then and there pending before him, the said Burton M. Cross, in his said executive capacity as Governor of the State of Maine, to wit, to procure the said Burton M. Cross, in his said capacity aforesaid, to exercise his influence with the State of Maine Highway Commission to cause said Commission, on behalf of the State of Maine to continue the policy of causing to be purchased by the State of Maine said "Rode-Rite" treated cutback inverted emulsified asphalt, against the peace of the State and contrary to the form of the Statute in such case made and provided."

THIRD and FOURTH counts: "with intent then and there to influence the judgment of the said Burton M. Cross in a matter that might legally come before him in his said official capacity, to wit, as said Governor and, as such, a legal member of the Standardization Committee as defined by Chapter 14 Section 39 of the Revised Statutes of the State of Maine, to wit, to procure the said Burton M. Cross, in his said capacity aforesaid, to use his influence with said Standardization Committee to prevent a change in the existing standard specifications applying to the purchasing policy of the State of Maine with reference to the purchasing of treated cut-back inverted emulsified asphalt, against the peace of the State and contrary to the form of the Statute in such case made and provided."

FIFTH and SIXTH counts: "with intent then and there to influence the vote of the said Burton M. Cross in a matter that might legally come before him in his said official capacity, to wit, as said Governor and, as such a legal member of the Standardization Committee as defined by Chapter 14 Section 39 of the 1944 Revised Statutes of the State of Maine, to wit, to procure the said Burton M. Cross in his said capacity aforesaid, to use his vote as a member of said Standardization Committee to prevent a change in the existing standard specifications applying to the purchasing policy of the State of Maine with reference to the purchasing of treated cut-back inverted emulsified asphalt, against the peace of the State and contrary to the form of the Statute in such case made and provided."

SEVENTH and EIGHTH counts: "with intent then and there to influence the action, opinion and judgment of the said Burton M. Cross in a matter then and there pending before him, the said Burton M. Cross, in his said capacity as Governor of the State of Maine, to wit, to influence the said Burton M. Cross to change, alter and modify his decision that the State Highway Commission should no

longer cause the State of Maine to purchase "Rode-Rite" treated cut-back inverted emulsified asphalt, against the peace of the State and contrary to the form of the Statute in such case made and provided."

The defendant in brief is charged with offering a bribe to the Governor; in counts one and two, to exercise his influence with the State Highway Commission to continue its policy of causing "Rode-Rite" to be purchased by the State; in counts three and four, to use his influence with the Standardization Committee to prevent a change in existing specifications; in counts five and six, to influence the vote of the Governor in the Standardization Committee; and in counts seven and eight, to "change, alter and modify his decision that the State Highway Commission should no longer cause the State of Maine to purchase 'Road-Rite.' "

The State joined in the demurrer. The right of the defendant to plead over if the demurrer should be overruled was granted by the presiding justice.

All will agree that an offer to the Governor of our State of the nature described in the indictment is an attempt to debauch the public service and thus to destroy the integrity of our government.

The argument of the defendant is not that the facts stated do not constitute a moral wrong, but that they do not set forth a crime. The issue for our determination is whether an offense under the bribery statute, *supra,* is sufficiently set forth in any one of the eight counts of the indictment. If so, the demurrer was properly overruled and the defendant must stand trial on the indictment. *State* v. *Miles,* 89 Me. 142, 36 A. 70.

The sufficiency of the indictment is attacked on two main grounds, to quote from the defendant's brief:

"(1)   That the Governor had no official or executive capacity, authority or legal duty, either at

common law or under the bribery statute, over the matter concerning which the bribe was allegedly offered; and (2) That if he did have such official capacity and legal duty, it is not properly alleged in any count in the indictment."

The defendant takes too small a view of the office of Governor. To say that a person with impunity may attempt to blind the eyes of a Governor in the manner outlined, shocks the conscience. The defendant would have us believe that in 133 years of statehood we have failed to provide criminal penalties for such an evil.

From our study of the statutes we conclude that the Governor has no direct authority with respect to the purchase of "Rode-Rite." Without going into detail it would appear that the State Purchasing Agent, the Committee on Standardization, and of course the State Highway Commission, all have a direct part in the purchase of the supplies for the maintenance of our highways. Reference to the statutes will disclose the specific authority and duty of the several officials. It is not the Governor's function to attend to such purchases.

We place our decision, however, not upon construction of the statutes which provide in varying degrees of detail for the conduct of the executive business of the State, but upon the broad constitutional authority and power of the Governor. It is fundamental that the powers of the Governor found in the Constitution cannot be altered or changed, increased or lessened, through action of the Legislature, and that the Governor cannot escape his constitutional powers and obligations.

The pertinent provisions of the Constitution in Article V, Part First, read:

"Sec. 1. The supreme executive power of this state shall be vested in a Governor.

"Sec. 10. He (Governor) may require information from any military officer, or any officer in the

executive department, upon any subject relating to the duties of their respective offices.

"Sec. 12. He (Governor) shall take care that the laws be faithfully executed."

In an Opinion of the Justices, 72 Me. 542, 545, it is said, with respect to Sec. 1:

"Article 5, part first, of the constitution, relates to 'executive powers' and defines and limits the same.

"By § 1, 'The *supreme executive* power of the State shall be vested in a governor,' thus recognizing him as the head of the executive department of government. But he is not the executive department. 'He shall take care that the laws be faithfully executed.' He may issue commissions, sign warrants, remit penalties, grant reprieves, commutations and pardons, but he does all this by and with the advice of his council. He carries into effect the doings of the executive department of which he is the head but he does not control it.

"If he was clothed with supreme and uncontrolled executive power, the council would have no duties. His powers are only what are specially given him by the constitution or necessarily inferable from powers clearly granted. He is to execute the powers conferred, in the manner and under the methods and limitations prescribed by the constitution and the statutes enacted in accordance therewith."

It will be seen from the Opinion of the Justices relating to the power of removal of an officer that the Governor, while obviously not the entire executive department, is nevertheless the head of it.

In *State ex rel. Stubbs* v. *Dawson,* 119 P. 360, 363, 39 L. R. A. (NS) 993, the Kansas Court said:

"An executive department is created, consisting of a Governor and the other officers named, and he is designated as the one having the supreme executive power; that is, the highest in authority in that

department. In the same connection, it will be noticed that the other executive officers are required to furnish information upon subjects relating to their duties, and to make annual reports to him, and withal he is charged with the duty of seeing that the laws are faithfully executed. It is manifest from these various provisions that the term 'supreme executive power' is something more than a verbal adornment of the office, and implies such power as will secure an efficient execution of the laws, which is the peculiar province of that department, to be accomplished, however, in the manner and by the methods and within the limitations prescribed by the Constitution and statutes, enacted in harmony with that instrument."

So then, the officer whom the defendant is charged with seeking to corrupt was the head of the executive department of the State.

The Governor is charged in Sec. 12 with the duty to "take care that the laws be faithfully executed."

In giving their opinion that a sheriff is an executive officer, Justices Mellen and Preble said in Opinion of the Justices, 3 Me. 484, 486:

"In doing this important service, the power of sheriffs and coroners must be resorted to, when legal coercion is necessary; in which case they are expressly aiding the governor in the execution of the laws, and acting under his commission. In fact, in all cases, their power, when lawfully exercised, is in aid of the governor, and to enable him to do his duty in causing the laws to be executed faithfully. These duties he cannot perform. These powers he cannot exercise in person. Such a performance, such an exercise was never contemplated."

The Governor of the State under our Constitution has the power to require information from any officer in the executive department. He has the duty to "take care that the laws be faithfully executed." He is the head of the executive

department. To carry out these great constitutional powers, in our view, everything pertaining to the executive department is at all times pending before the Governor in his official capacity.

The moment a proposal for the purchase of "Rode-Rite," under the conditions outlined, was made, the matter was then and there pending officially before the Governor. It would be a poor executive who did not thereafter take steps to see that any purchase of this product should be examined with the utmost care to the end that no fraudulent charges might be contained in the price paid by the State. Let us suppose a Governor is informed that the State Highway Commission proposes to purchase "Rode-Rite." We think he can inquire from the State Highway Commission, and is entitled to information from any other executive officer, about the details of the contract, although the Governor himself has no authority to make such a purchase. The eyes of the Governor are at all times open upon the activities of the executive department. Nothing officially escapes his attention. Thus the proposed purchase of "Rode-Rite" by the State in connection with which the defendant is charged with offering to pay the Governor a share of the purchase price, was before the Governor. Had he information, let us say, that a similar proposal had been made to the State Highway Commission, or the Purchasing Agent, or anyone else in the executive department, it would have been his constitutional duty to have taken steps to see that the contract was not made. If the Governor must put a stop to corrupt agreements involving other state officers, certainly he must not permit the State to enter into a contract in which his own good faith and honesty are at stake. By the same token an attempt to corrupt the Governor of the State of Maine through offering a commission on the sale of goods to the State of Maine is neither more nor less than an attempt to bribe a state officer in the performance of his official duties.

In the several counts the State has set forth essentially the one transaction with different facts to cover questions of proof. Each count stands as a valid and sufficient count on the general principle that everything pertaining to the executive department of the State, and more particularly in this instance to the maintenance of our highways, is at all times a matter pending or a matter which may legally come before the Governor in his official capacity. The indictment sufficiently sets forth an offense under the statute. The entry will be

*Exceptions overruled.*

## STATE OF MAINE

### SUPREME JUDICIAL COURT AND SUPERIOR COURT

All of the Justices concurring, Rule 43 of the Revised Rules of the Supreme Judicial and the Superior Courts as recorded in Volume 147 Maine, Page 482, is hereby amended by striking out the following clause in the ninth, tenth and eleventh lines of said Rule, to wit: "the second day of the April term and the first day of the September term in Hancock County," and inserting in place thereof the following: "the second day of the April term and the first day of the September and December terms in Hancock County."

The foregoing clause to become effective January 1, 1954. Dated at Skowhegan, Maine, this 13th day of October, A. D. 1953.

EDWARD F. MERRILL
*Chief Justice*