HARRIS, Judge.
This is an appeal from the Colbert County Court wherein appellant was convicted of speeding on a public highway and a fine of $10.00 was assessed against him, together with the Court costs. Appellant is not an indigent. When his case was called for trial he appeared in open court in his own proper person, without counsel, and agreed to proceed to trial on the original affidavit to which charge he pleaded not guilty. The case was tried by the Court without a jury as appellant did not demand, in writing, a jury trial as prescribed by the Act creating the Colbert County Court in 1969. This Act provides, in pertinent part, as follows:
“All misdemeanor cases, except as herein otherwise expressly provided, shall be tried by the court without a jury unless a demand in writing for a jury trial be filed in the cause by the defendant with the clerk of the court on or before the first sounding of the cause after the defendant has been arrested or taken into custody on an affidavit and warrant returnable to the court, or on an indictment returnable to the court, or on other proper process, if the cause is sounded within fifteen days after the defendant has been so arrested or taken into custody; provided, however, that if the cause is not sounded within fifteen days after the defendant has been so arrested or taken into custody, then the defendant must demand a trial by jury in the manner provided within fifteen days after he has been so arrested or taken into custody; and provided further that it shall be deemed a sufficient demand in writing for a trial by jury if such demand is indorsed on a bond by the defendant either on, or before the first sounding of the cause, or prior to the expiration of fifteen days, whichever occurs first. A failure to demand in writing a trial by jury as herein provided shall be held and deemed to be a waiver by the defendant of a trial by jury.” (Emphasis supplied)
The case was tried before a special judge who was acting for the regular judge. The judge asked the Deputy District Attorney if the State was ready and got an affirmative reply. He then asked appellant if he was ready and he answered, “yes, sir,” and the Court asked the District Attorney to call the first witness and he called State Trooper Charles William Owens, and without further proceedings the case got under way.
Trooper Owens testified that he worked for the Department of Public Safety for the State of Alabama and has been so employed for approximately nine years. He stated that he was on duty on the morning of August 21, 1976, on U.S. Highway 43 in Colbert County and was headed north. That he met appellant who was traveling south and that he clocked him on radar at 81 miles per hour. He testified that he checked his radar equipment when he went on duty that morning and found it to be properly operating. That after clocking appellant driving his automobile at 81 miles per hour in a 55 mile per hour zone he turned and got behind appellant and turned on the blue light and stopped him. He directed appellant to get in the officer’s patrol car where he advised him he was going 81 miles an hour and wrote him a ticket for speeding. Appellant did not say anything to the officer. He just took the speeding citation and got back in his car and left.
Appellant stated to the Court that he • wanted to ask the officer a couple of questions. Thereupon he asked the officer on cross-examination the following questions:
“Q. The portion of U.S. 43 where you are speaking of, would you tell the Court if this is a four-lane?
“A. Yes, it is.
“Q. And what is the .speed limit at this particular area?
“A. Fifty-five.
“Q. Now, just one other question, were there any other circumstances involved pertaining to the driving other than simple speeding?
“A. No sir, just speeding.”
*588 At this point the State rested, and appellant informed the Court that he had one witness to call — Manual Ferguson.
From the record:
“Q. Mr. Ferguson, on August 21, were you a passenger in an automobile with the defendant in this case?.
“A. I was.
“Q. And would you tell the Court how long you had been a passenger? In other words, was it on a long trip or—
“A. It was on a long trip, yes. I would say from about four o’clock.
“Q. All right. And where were you headed, Mr. Ferguson?
“A. I was headed — well, home to Jasper. “Q. Are you from Jasper, Mr. Ferguson? “A. That’s right.
“Q. Do you know the defendant in the case?
“A. Yes.
“Q. Where is the defendant from?
“A. He’s from Jasper, too.
“Q. And you were riding as a passenger in the automobile with the defendant. “A. That’s right.
“Q. Now, would you describe to the Court any illness or ailment that you may have had on this occasion?
“A. Yes, I would say, we was about half way between here and Kansas City or outside of Memphis I began to have some pains and I couldn’t exactly pinpoint where the trouble was. And it just kept getting worse.
“Q. Were these pains mild or - severe?
“A. They began to get severe.
“Q. Did you take any kind of medication for indigestion or things of this sort?
“A. Yes, I did. I took some Malox and Rolaids and drank some milk.
“Q. Did these medications offer any relief? From the pain.
“A. No, they did not.
“Q. Now, had you so expressed your ailment to the defendant in the case?
“A. I had, yes.
“Q. And the defendant was aware of your illness.
“A. Right.
“Q. Now, would you tell the Court— you’re aware of the stopping by the State Trooper outside of Muscle Shoals or Tus-cumbia.
“A. Right.
“Q. Now, after this occasion, where did the defendant proceed?
“A. On to Jasper and—
“Q. And then what did you do when you got to Jasper?
“A. Well, immediately after getting home, my wife took me on to my family doctor and he checked me and sent me right on to the hospital. And I would say within three hours, I saw a couple of surgeons at the hospital and within three hours, I was operated on.
“Q. Within three hours of the time that you arrived back in Jasper.
“A. Right.
“Q. Would you say that the defendant in the case was concerned about your condition?
“A. Very much so.
“Q. That’s all, Your Honor.
“BY THE COURT: I have a couple of questions. Do you want to cross-examine?
“MR. HUDSON: It doesn’t matter. Go ahead if you want to ask first.
“BY THE COURT: You cross-examine him first.”
On cross-examination by the District Attorney Mr. Ferguson testified that he began having these pains somewhere on the other side of Memphis and the pains continued to get worse as they drove along, but he didn’t stop anywhere to obtain any kind of medical treatment as he didn’t think the pain was that severe. That he took Maalox and Rolaids to relieve some of the pain and he wanted to get home and see his family doctor. He didn’t want to wind up in a hospital away from home. That after getting home his wife carried him to see his doctor and he was admitted to the hospital and three hours later he was carried to surgery. He further testified that his ap *589 pendix did not rupture after he reached Jasper, Alabama, nor at any time.
Appellant asked Mr. Ferguson if he had a certificate from his doctor and he said yes and appellant stated, “Well, I would like to present it to the Court, so they’ll know that this is accurate.” A certificate from the doctor was presented to the Court. The certificate is dated 9-24-76, three days before trial, and reads as follows:
“This is to verify that Mr. Ferguson was admitted to the hospital on 8/21/76 with acute appendicitis.
Gaines W. Keith, M.D.”
The trial judge asked Mr. Ferguson some questions and it was developed that Mr. Ferguson and appellant left Kansas City around 4:00 p. m. the afternoon before appellant was stopped the next morning by Trooper Owens. He told the Court that he was lying back in the front seat on the trip back to Alabama. The Court asked Mr. Ferguson if he said anything to the State .Trooper about being sick, and he replied, “No, No, I didn’t. In fact I didn’t even speak with him.”
Appellant took the stand in his behalf and testified as follows:
“MR. WILSON: I’ll just make this simple statement to the Court. I was driving the automobile, of course, at the time of the speeding citation. But to clarify the circumstances, we had left Kansas City approximately four o’clock the preceding afternoon. We had another gentleman riding with us at the time coming to Florence. And he did most of the driving during the night. And I had slept in the back seat of the automobile during the night. And we had dropped him off at his residence in Florence and then, of course, I was driving from that point on. We were proceeding south where I had just stopped to purchase gasoline and then was headed on out— went south on U.S. 43 where the citation occurred. I was concerned, of course, with Mr. Ferguson’s illness. And that is the excuse for the excessive speed, but I would testify to the Court that there were no circumstances involved other than the case of simple speed. But I was hurrying to get Mr. Ferguson back to Jasper so he could consult with his doctor. That’s all.”
On cross-examination appellant stated that he did not tell the State Trooper that he had a passenger who was very ill and did not attempt to give the officer any explanation as to why he was speeding. He said he knew the speed limit and, “I do not deny exceeding the official speed limit.” He stated that he was driving a 1976 Monte Carlo Chevrolet, at the time he was stopped by the Trooper. At the conclusion of the case the Court asked appellant if he wanted to make a closing argument and he said he did. The prosecuting attorney made the opening argument and appellant made the closing argument. The Court found appellant guilty as charged and set the fine at $10.00 and costs.
After the Court assessed a $10.00 fine and costs against appellant he gave notice of appeal and requested suspension of the sentence pending appeal. His request was granted and he is free on bond pending this appeal.
Appellant’s counsel contends that this case should be reversed on two grounds, (1) the trial court failed to advise appellant of his right to counsel, and (2) appellant did not knowingly waive his right to a jury trial.
We will treat these contentions in the order presented.
- Appellant was given a citation for speeding on August 21, 1976, and his case was not called for trial until September 27,1976. Appellant had over thirty days from the time he received the citation for speeding until his case was called for trial in which to employ counsel. It is clear to us that appellant never intended to employ counsel but, on the contrary, intended to represent himself. He made preparations to try his case as witness the fact that he secured a doctor’s certificate concerning the nature of Mr. Ferguson’s illness on September 24, 1976, three days before trial, and which he introduced into evidence.
*590 Appellant was not charged with a serious” offense and his counsel, in brief, states, “An examination of the penalties for ‘speeding’ does not reveal any exposure to deprivation of liberty.”
In Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530, the Supreme Court said:
“Under the rule we announce today, every judge will know when the trial of a misdemeanor starts that no imprisonment may be imposed, even though local law permits it, unless the accused is represented by counsel. He will have a measure of the seriousness and gravity of the offense and therefore know when to name a lawyer to represent the accused before the trial starts.
“The run of misdemeanors will not be affected by today’s ruling. But in those that end up in the actual deprivation of a person’s liberty, the accused will receive the benefit of ‘the guiding hand of counsel’ so necessary when one’s liberty is in jeopardy.”
Here we have a “petty offense,” and a mere $10.00 fine imposed, and appellant’s liberty was not involved.
Section 6 of the Constitution provides “That in all criminal prosecutions, the accused has a right to be heard by himself and counsel, or either; * * * ”
That appellant elected to defend himself cannot be disputed on the record before us. As heretofore stated he is not indigent and there is no constitutional or statutory provision in Alabama requiring that the services of an attorney be thrust upon him. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562.
Appellant would not have been entitled to appointed counsel to represent him on the non-serious and petty offense charged against him even if he were indigent. Irvin v. State, 44 Ala.App. 101, 203 So.2d 283; King v. State, 55 Ala.App. 306, 314 So.2d 908.
Alabama has a statutory scheme for the appointment of counsel for indigent defendants charged or convicted of serious criminal offense. Title 15, Sections 318(1), 318(11), Code of Alabama 1940, Supplement. These provisions were enacted by the Legislature to enable the Court to comply with decisions of the Supreme Court of the United States which relate to the trial of indigent defendants. Martin v. State, 277 Ala. 153, 167 So.2d 912.
Appellant’s second contention is that he was entitled to a jury trial even though he never demanded one.
It is settled law in Alabama that a jury trial is waived in misdemeanor cases by a failure to demand such a trial within the time prescribed by law. Red v. State, 169 Ala. 6, 53 So. 908; Daley v. State, 16 Ala. App. 7, 74 So. 843; Ireland v. State, 11 Ala.App. 155, 65 So. 443; Alford v. State, 170 Ala. 178, 54 So. 213; McClellan v. State, 118 Ala. 122, 23 So. 732.
We have answered both of appellant’s contentions that this case should be reversed and find that his contentions are without merit.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.