This appeal follows a conviction for the offense of capital murder and a sentence of death. For the reasons outlined below, the conviction is reversed and this case is remanded for a new trial. Because of our decision to reverse and remand this case for a new trial, only a brief outline of the facts will be presented.
On December 8, 1981, the appellant took a loaded shotgun to a "Seven Eleven" convenience store near the corner of Michigan and Government Streets in Mobile. The appellant originally planned to rob the convenience store, but changed his mind when he realized that the store was crowded. A taxicab was parked near the store and its operator, Percy Gibson, was inside the cab. The appellant walked over to the taxicab, put the shotgun to Gibson's neck and demanded that Gibson give him all of his money. After Gibson gave the appellant 40 cents, the appellant forced Gibson out of the cab and made him walk around the corner. The appellant followed Gibson with the loaded shotgun.
According to the appellant's statement, he dropped the shotgun and as he did it accidentally discharged. The appellant ran down the street to a nearby car and later tried to implicate an acquaintance by the name of "Arthur Patterson" as the person who had robbed and killed the cab driver. *Page 329 
According to the autopsy report, Gibson suffered a massive "contact wound" on the side of his abdomen from the shotgun blast. Testimony elicited at trial indicated that the muzzle of the shotgun was pressed against Gibson's skin or clothing when the shotgun discharged.
On the night of the shooting, the appellant called Sergeant Rivers Johnson, with the Mobile Police Department, and, after giving a false name, requested that Sergeant Johnson meet with him. According to Sergeant Johnson's testimony, the appellant volunteered to go to the police station to discuss the shooting incident, even though he was not a suspect at the time. The day after the shooting, Sergeant Joseph Connick, with the Mobile Police Department, went to the appellant's residence, advised the appellant of his constitutional rights, and placed him under arrest. Sergeant Connick testified that he went to arrest the appellant after he was implicated by another black man who was with the appellant on the night of the shooting. According to Sergeant Connick, the appellant was again advised of his constitutional rights after they arrived at the police station, but the appellant refused to give a statement at that time.
Around 9:00 a.m. on the morning of December 9, 1981, Mobile County District Attorney Chris Galanos arrived at the police station after receiving a call informing him of the appellant's arrest. Galanos testified at trial that he talked with the appellant, advised him of his constitutional rights and reviewed a "waiver of rights" form with the appellant. According to Galanos, the appellant refused to give a statement and refused to sign the waiver form. After Galanos left the police station, the appellant changed his mind and decided to talk. Galanos was then summoned and he returned approximately an hour and a half later and participated in the questioning of the appellant.
Lieutenant Vincent Richardson, Mobile Police Department, testified that soon after Galanos left the police station the first time, the appellant summoned him and indicated that he wanted to give a statement. The appellant was advised of his constitutional rights and waived his right to have an attorney present. Both Richardson and Galanos testified that no threats or promises were made to the appellant in order to induce him to make the statement. The statement was tape recorded and later transcribed.
Although several issues are raised on appeal, we will consider only one of the issues at this time. The argument advanced on appeal which has merit concerns the testimony given at trial by the district attorney, Chris Galanos. Galanos was the sole prosecutor of the case. Galanos gave the opening and closing arguments; called all of the State's witnesses; and even called himself as a witness to testify on behalf of the State. Galanos's testimony helped to establish the voluntary nature of the appellant's incriminating statement. According to the appellant, Galanos's dual role as prosecutor and witness constitutes reversible error because Galanos "added the prestige and integrity of his office and position in stating as a fact for the jury's consideration that no wrongdoing brought about [the appellant's] confession." In support of his position, the appellant cites Waldrop v. State, 424 So.2d 1345
(Ala.Cr.App. 1982), appeal after remand, 462 So.2d 1021
(Ala.Cr.App. 1984), cert. denied, ___ U.S. ___, 105 S.Ct. 3483,87 L.Ed.2d 618 (1985).
In Waldrop, supra, District Attorney Chris Galanos not only prosecuted the State's capital murder case against Waldrop, but he also took the stand and gave testimony which helped to establish the validity of Waldrop's confession. After an excellent discussion of the relevant case law, this court inWaldrop, per Judge Bowen, concluded as follows:
 "Under the circumstances, allowing the district attorney to continue to prosecute this case and argue to the jury had the effect of allowing him to violate the rule that it is not permissible for the solicitor to make an emphatic statement that the defendant is guilty of the crime *Page 330 
charged. White v. State, 294 Ala. 265, 270, 314 So.2d 857 (1975). `[I]t has never been contemplated or allowed that an emphatic statement by a solicitor, of his own knowledge, could be made to the effect that the defendant is actually guilty of the crime charged in the indictment.' Rowland v. State, 31 Ala. App. 605, 607, 20 So.2d 881, (1945).
". . .
 "So sacred and fundamental is the principle that the jury not be improperly influenced that our Supreme Court has held that it constituted reversible error to allow the Sheriff, who had acted as the bailiff to the jury, to testify as a witness for the State even though there was no testimony of any conversation between the sheriff and the members of the jury. There the mere `possibility of influence exerted on the jury's verdict by the sheriff-bailiff was sufficient to deprive the defendant of his right to trial by an impartial jury.' Chancellor v. State, 291 Ala. 413, 282 So.2d 242 (1973).
 "We fully recognize that the matter of allowing a prosecutor to become a witness is largely within the discretion of the trial judge. However, once a district attorney testifies he should withdraw from the prosecution of that particular trial unless there is some sound and compelling reason which would require his continued service. See State v. Donahue, 315 So.2d 329 (La. 1975), where the district attorney was ordered recused because he `was the sole witness of the content of an oral confession which it is acknowledged he will testify to at the trial.'
 "`Our decision is reached only because of the high respect we have for the office of the district attorney and because of our recognition of the power and influence he exerts in the prosecution of a criminal case. Any decision other than the present one seriously jeopardizes and imperils the fact finding process of a trial by jury.'" Id.
424 So.2d at 1348-49.
This court, in Waldrop, also rejected the State's argument that the district attorney's testimony was "merely cumulative," because it was only through Galano's testimony that the incriminating statement was admitted into evidence and read to the jury. Id., 424 So.2d at 1350-51.
Although there are several distinctions between the facts in the instant case and the facts presented in Waldrop, supra, we conclude that Waldrop controls the instant case. The most significant distinction between the instant case and Waldrop is that defense counsel in Waldrop specifically objected at trial to the "dual role" that the district attorney played during the trial of the case. In the present case, however, defense counsel made no objection to the district attorney's actions at the trial court level. At least one case authored by the Alabama Supreme Court indicates that the testimony of the district attorney at the trial of a case which he was also prosecuting, while improper, would not constitute reversible error where there was no objection presented at trial. Ex parteGilchrist, 466 So.2d 991 (Ala. 1985). The Alabama Supreme Court in Ex parte Gilchrist concluded that the "failure to object waived the prosecutorial error." Id.
In the instant case, however, unlike Gilchrist, the offense is capital murder. Under Rule 45A, A.R.A.P., this court "shallnotice any plain error or defect" in death penalty cases "whether or not brought to the attention of the trial court." [Emphasis added.] Under this "plain error rule," this court is obligated to take appropriate action where the error "has or probably has adversely affected the substantial right of the appellant." See also: § 12-22-241, Code of Alabama (1975). Under the "plain error doctrine", the failure to object to Galanos's testimony in the instant case would not prevent this court from considering the prejudice to the appellant which occurred as a result.
In Stringer v. State, 372 So.2d 378 (Ala.Cr.App.), cert.denied, Ex parte Stringer, 372 So.2d 384 (Ala. 1979), this court initially noted that we do not "encourage testimony by any prosecuting attorney," but then concluded that the act of the district attorney's *Page 331 
testifying in the trial of the case did not constitute reversible error. In Stringer, this court specifically found that "there is no evidence in the record that the district attorney formed the intention to testify in advance of trial."Id. at 381. In the present case, however, it is evident that the district attorney was aware that he would testify, prior to trial, and yet he conducted the entire case, including the opening and closing arguments and the examination of all of the witnesses, except for himself.
Galanos's testimony was presented as a significant part of the State's case-in-chief, after counsel for both sides assured the jury in opening arguments that what the attorneys said would not be "evidence"; the "evidence," according to counsel, would come from the testimony of the witnesses who took the stand. Galano's obvious position was that he could proceed as both an advocate for the prosecution and as an "unbiased" witness for the State. The prejudicial impact of such a position on the members of the jury is apparent. Once Galanos took the stand to testify, the entirety of the State's case was clothed in a mantle of competency and credibility. Jurors are aware that attorneys act as enthusiastic proponents of their particular point of view. Jurors also know that witnesses, on the other hand, are sworn to tell the truth, and only the testimony which comes from the witness stand will ultimately determine the outcome of any trial. The jurors in the present case were specifically instructed that what the attorneys said would not constitute "evidence." The jurors were also told that it was only the testimony from the witness stand which they should consider in their deliberations.
In the present case, the district attorney exceeded the bounds of prosecutorial ethics and propriety when he concluded that he could establish the appellant's guilt, both by legal argument, as well as by his own factual testimony. Galanos's act of taking the witness stand and giving sworn testimony was abundantly prejudicial to the rights of the appellant. Once Galanos determined that it would be necessary for him to testify at trial, he was under an affirmative duty to withdraw and have other counsel prosecute the case. This, however, he did not do. Because of the district attorney's misconduct, the appellant is entitled to a new trial.
REVERSED AND REMANDED.
All the Judges concur.