Following his convictions in the district court for promoting gambling and possession of a gambling device, violations of §§ 13A-12-22 and 13A-12-27, Code of Alabama 1975, respectively, the appellant, Thomas Newell Barrett III, appealed to the Circuit Court of Calhoun County for a trial de novo.[1] Following a nonjury trial, he was convicted of the same offenses. He was sentenced to 12 months in jail for each conviction and was ordered to pay a $2000 fine, court costs, and an assessment for the victims compensation fund. The jail terms are to be served concurrently. By order of this court, all matters included by stipulation between the appellant and the state were incorporated into the record on appeal.
The charges against the appellant arose out of his involvement with illegal gambling taking place at the Frontier Palace bingo hall ("the Palace") in the City of Piedmont in Calhoun County. The appellant was the floor manager of the Palace, and he was arrested after a routine inspection for illegal gambling led to the execution of a search warrant on the Palace by the Calhoun County district attorney's office. Specifically, investigators from the district attorney's office determined that a game of chance called "U-Pick Em" or alternatively "U-Quick-Pick Em," which was played at the Palace in addition to the regular bingo games, was an illegal lottery.
The appellant raises five issues in this appeal: 1) Whether "U-Pick Em" is a bingo game and thus legal in the City of Piedmont; 2) whether the appellant was denied due process when he was convicted for behavior that, he alleges, had not been previously defined as illegal by statute or caselaw; 3) whether the appellant was denied his state and federal constitutional rights when he was denied a jury trial by the circuit court; 4) whether the trial court erred when it allowed the search warrant and the underlying supporting affidavit to be admitted into evidence; and 5) whether the trial court erred when it refused to disqualify the district attorney and his office from prosecuting this case because an assistant district attorney, unconnected to this prosecution, testified in the state's rebuttal case.
 I.
The appellant contends that "U-Pick Em" is a game of bingo, which is legal in Calhoun County. We disagree. The longstanding public policy of this state as embodied by § 65 of the Constitution of Alabama 1901, prohibits the legislature from authorizing lotteries in Alabama. It states: "The legislature shall have no power to authorize *Page 531 
lotteries . . . and shall pass laws to prohibit the sale in this state of lottery or gift enterprise tickets or tickets in any scheme in the nature of a lottery . . . ." The Alabama Constitution was amended in 1990 by Amendment No. 508, making bingo[2] legal in Calhoun County. The amendment does not define bingo, but rather refers only to "[t]he operation of bingo games" in Calhoun County. It makes the operation of bingo games in Calhoun County subject to the provisions of resolutions or ordinances of the county or cities in Calhoun County. The City of Piedmont's ordinance number 429 regulates bingo in that city. The ordinance contains the City's definition of bingo:
 "Bingo. That specific kind of game, or enterprise, commonly known as 'bingo,' in which prizes are awarded on the basis of designated numbers, or symbols, which are drawn, at random, by the operator of said game and which are placed by the persons playing, or participating in said game, on cards, or sheets or paper, which contain, or set out, numbered spaces, upon which said designated numbers, or symbols, may be placed by the persons playing or participating in said game."
(Emphasis added.)
The appellant contends that the "U-Pick Em" game is a bingo game, because, he alleges, the specifics of the game match the technical specifications in the ordinance. "U-Pick Em" is played in the following manner: Each player pays one dollar for each chance to win. In exchange the player is given a card containing the numbers 1 through 75. For two dollars a player gets two cards; three dollars, three cards, etc. The player then chooses eight numbers on each card and gives the cards over to a computer operator who feeds the numbers into a computer. In the alternative, the player can elect to let the computer automatically choose the eight numbers per card. Regardless of which method is selected, the computer prints a slip of paper containing the eight numbers and that paper is given to the player. The slip of paper contains rows of numbers which correspond to the numbers selected. If the player paid one dollar the paper contains one row of eight numbers; two dollars results in two rows of eight numbers; etc. Depending on the number between 1 and 75 chosen, the numbers have a letter attached to them. The letter is a "B," "I," "N," "G," or "O," depending on where the number would fall on a common bingo card. After each player has the slip of paper, the actual playing commences. An announcer calls out 20 numbers; if any player matches each of eight numbers in any given row, that player wins the grand prize. If no one matches all eight numbers during the first 20 calls, the announcer continues to call numbers until the first person to match eight numbers in one row calls bingo. If the winner does not match within the first 20 numbers, the prize is called a consolation prize and is very small when compared to the grand prize. Additionally, if no one wins the grand prize, that prize is increased and carried forward to another night. The record shows that on the nights that the investigators were present the potential grand prize exceeded $10,000 while the consolation prize was $100.
We began our analysis above by noting that Amendment No. 508 allows only a narrow exception to the state's clear public policy against lotteries and the Alabama constitution's prohibition of lotteries: the exception that is restated by that portion of Piedmont's ordinance that defines "bingo" as "[t]hat specific kind of game, or enterprise, commonly known asbingo. "(Emphasis added.) In regard to the ordinance's specific definition of bingo that follows the phrase "[t]hat specific kind of game, or enterprise, commonly known as 'bingo,' " we find, based upon the following discussion, that the specific definition, at most, merely restates rather than broadens the intent and meaning of the phrase "[t]hat specific kind of game, or enterprise, commonly known as 'bingo.' " It obviously is nothing more than an attempt, albeit poorly drafted, to describe the workings of the game "commonly known as 'bingo.' "
We first acknowledge the fundamental principle that the ordinance must be construed in harmony with this state's strong *Page 532 
public policy against lotteries as expressed in § 65 of the Alabama Constitution.
 "Ordinances are to be construed in the light of, and in harmony with, applicable provisions of charter, state law, constitution, and public policy. A particular ordinance is to be construed with reference to the grant of power, in charter, state law, constitution, and public policy. A particular ordinance is to be construed with reference to the grant of power, in charter or statute, to enact it. Moreover, an ordinance enacted pursuant to a statute should be construed by reading it with the statute, and if the language of both is in substance alike the presumption is indulged that the ordinance was designed to follow the statute. . . .
 "An ordinance cannot prevail in conflict with state law except by provision of the state law itself. . . . The public policy of the state, if any, respecting the subject matter of the ordinance must be considered, since an ordinance inconsistent with the state's policy as written in its statutes is void."
McQuillan, Municipal Corporations, § 20.41 (3d ed. rev. 1988). We also are mindful of the following principles of construction: "[I]f possible, no ordinance should be so construed as to render any sentence, phrase or word superfluous, void or insignificant." Id. at § 20.55.
 "The validity of ordinances is favored, and ordinary, common sense and practical meanings are preferred. An ordinance is construed as a whole and consideration is given to all its parts, although words or parts can be altered, substituted, or disregarded in giving effect to the meaning dictated by a reasonable and practical construction of the entire ordinance."
(Emphasis added.) Id. at § 20.38.
Even a layman could not assert in good faith that the technical definition in the ordinance is an attempt to expand the common, ordinary definition of the game of bingo. Moreover, as a matter of law, the City of Piedmont could not pass an ordinance that broadens the scope of the narrow exception to the prohibition of lotteries in the Alabama Constitution. SeeCity of Piedmont v. Evans, 642 So.2d 435 (Ala. 1994); §11-45-1, Code of Alabama 1975 (municipal ordinances must be consistent with state law). Construing the ordinance as a whole in harmony with strongly expressed public policy, we hold that no expression in the ordinance can be construed to include anything other than the ordinary game of bingo.
The game described above is clearly not the game "commonly known as bingo." On the contrary, we agree with the statements by an employee of the Palace and also by the appellant himself, when asked by an investigator how to play the game, that the game is played "like the Florida lottery." Because lotteries, other than the common game of bingo, are illegal in Calhoun county regardless of their perpetrator's thinly veiled attempts to disguise them, the circuit court was not in error in finding that "U-Pick Em" is an illegal lottery and that the appellant is guilty of violating §§ 13A-12-22 and 13A-12-27.
 II.
The appellant's next contention is that he was denied due process because, he argues, he was convicted for behavior that had not been previously defined as illegal by statute or caselaw. He argues that because he did not know that "U-Pick Em" was an illegal lottery, he could not have been found guilty of the two gambling related offenses. In essence, his argument is that because no one informed him that what he was doing was illegal he had no notice that his actions subjected him to possible prosecution. We find his argument to be without merit. See R.S.B. v. State, 632 So.2d 24, 26 (Ala.Cr.App. 1993) ("[i]gnorance of the law is no excuse"). Contrary to the appellant's assertion, legal bingo was clearly defined, capable of a layperson's understanding as that game "commonly known as 'bingo.' " There was ample warning that not every game played under the guise of bingo would qualify as a legal bingo game, and the appellant proceeded to promote this lottery, even with knowledge of this risk. See City of Piedmont v. Evans,642 So.2d 435 (Ala. 1994); § 11-45-1, Code of Alabama 1975 (municipal *Page 533 
ordinances must be consistent with state law).
 III.
The appellant's next contention is that he was denied due process of law because he did not make a knowing, intelligent, and voluntary waiver of his constitutional right to a jury trial in the circuit court. The only contention asserted by the appellant in the circuit court even remotely related to the issue he asserts on appeal is his allegation in his motion for a new trial that he was denied the effective assistance of counsel because, he says, his trial counsel failed to inform him of his right to a jury trial in the circuit court. However, this allegation did not preserve the issue. "Even constitutional issues must first be correctly raised in the trial court before they will be considered on appeal. Cagle v.State, 504 So.2d 1225 (Ala.Cr.App. 1987)." Hansen v. State,598 So.2d 1, 2 (Ala.Cr.App. 1991).
We note, however, that even had the appellant preserved the due process claim for review, it would be without merit. The nonjury trial in the circuit court was a trial de novo following the appellant's convictions in district court. A defendant must make a timely demand for a jury trial on appeal to the circuit court or the defendant waives the right to a jury trial. See Rule 18.1, Ala.R.Crim.P. and § 15-14-30. The record shows no timely demand for a jury trial.
We note additionally, that Rule 18.1 states in pertinent part: "Upon conviction in municipal or district court, the defendant shall be advised of the right to appeal for trial denovo and to demand a jury trial." (Emphasis added.) In the absence of a showing to the contrary, it is presumed that court proceedings are regular and proper, that the trial court has properly discharged its duties, and that it has observed all the necessary formalities imposed on it by law. Allison v.State, 645 So.2d 358 (Ala.Cr.App. 1994); R. Williams,Williams's Alabama Evidence § 41 (1967). There is no evidence in the record to support the appellant's contention on appeal that he did not know of his right to a jury trial upon appeal to the circuit court. Although his motion for a new trial following his convictions in circuit court contained a bare allegation that his counsel was ineffective for failing to inform him of his right to have a jury trial, the appellant provided no affidavits or other evidence to show that he was not informed by the district court or by his attorney of the right to have a jury trial in time to assert it. Because the district court is presumed to have followed the procedural mandate to inform the appellant of his right to a jury trial and the appellant has not presented evidence to rebut this presumption, the appellant has failed to overcome the factual presumption that the district court informed him of his right to a jury trial.[3]
 IV. V.
The appellant's last two contentions are that the trial court erred when it allowed the search warrant and the underlying supporting affidavit to be admitted into evidence and that the trial court erred when it refused to disqualify the district attorney and his office from prosecuting this case because an assistant district attorney, unconnected to this prosecution, testified in the state's rebuttal case. We find both of these contentions to be without merit.
The trial court's judgment is affirmed.
AFFIRMED.
All Judges concur.
[1] In a separate trial in the district court, Ronald Foster, the general manager of the Frontier Palace, the appellant's place of employment, was also convicted of the above two offenses and also appealed to the circuit court. Following a nonjury trial in the circuit court, Foster was convicted of those same offenses.
[2] City of Piedmont v. Evans, 642 So.2d 435 (Ala. 1994) (bingo is a type of lottery).
[3] We note that Barrett stipulated with the district attorney and with the circuit court's approval that all proceedings, including motions, from the earlier related circuit court trial of Ronald Foster would be incorporated into Barrett's circuit court case. In the earlier case, Foster had made a motion for a jury trial but it was denied as being untimely. This knowledge of the right to a jury trial could be imputed to Barrett due to the adoption of Foster's motion in Barrett's circuit court proceeding. *Page 534