The appellant, Ronald Carey Foster, was convicted in the district court of promoting gambling, a violation of §13A-12-22, Ala. Code. 1975, and of possession of a gambling device, a violation of § 13A-12-27, Ala. Code. 1975; both offenses are Class A misdemeanors. He appealed to the Circuit Court of Calhoun County for a trial de novo. Following a nonjury trial, the appellant was convicted of the same offenses. He was sentenced to 12 months in prison for each conviction, and was ordered to pay a fine of $1000,00 for each conviction, a $25,000 fee to the crime victim's compensation fund for each conviction, and court costs. The appellant raises nine issues on this appeal.
 I.
The appellant was the owner and manager at the Frontier Palace bingo hall ("the Palace") in the City of Piedmont in Calhoun County. He was arrested after the Calhoun County district attorney's office executed a search warrant on the Palace. Specifically, investigators from the district attorney's office determined that a game of chance called U-Pick-Em or alternatively U-Quick-Pick-Em (hereinafter U-Pick-Em), which was played at the Palace in addition to the regular bingo games, was an illegal lottery.
The appellant contends that U-Pick-Em is a game of bingo, and meets the definition of bingo set out in Piedmont Ordinance No. 429 which defines and regulates bingo within its jurisdiction. However, this issue is without merit.
Article IV, § 65, Alabama Constitution of 1901, prohibits the legislature from authorizing any type of lottery and affirmatively requires the legislature to pass laws prohibiting lotteries in Alabama. It states:
 "The legislature shall have no power to authorize lotteries or gift enterprises for any purposes, and shall pass laws to prohibit the sale in this state of lottery or gift enterprise tickets, or tickets in any scheme in the nature of a lottery; and all acts, or parts of acts heretofore passed by the legislature of this state, authorizing a lottery or lotteries, and all acts amendatory thereof, or supplemental thereto, are hereby avoided."
The Alabama Constitution was amended in 1990 by Amendment No. 508, legalizing bingo in Calhoun County. Amendment No. 508 states:
 "The operation of bingo games for prizes or money by certain nonprofit organizations for charitable, educational, or other lawful purposes shall be legal in Calhoun [c]ounty, subject to the provisions of any resolution or ordinance by the county governing body or the governing bodies of the respective cities and towns, within their respective jurisdictions as provided by law regulating such operation. The said governing bodies shall have the authority to promulgate rules and regulations for the issuance of permits or licenses and for operation of bingo games, within their respective jurisdictions; provided, however, that said governing bodies must ensure compliance pursuant to said law and the following provisions. . . ."
This court, construing Amendment No. 508, stated:
 " 'Amendment No. 508 to the Constitution of Alabama did not repeal Article IV, § 65, of the Constitution of Alabama. Amendment No. 508, simply amended the Constitution of Alabama by allowing the lottery of "bingo" to be operated legally in Calhoun County for prizes or money by certain nonprofit organizations for charitable, educational, or other lawful purposes. The only lottery legalized by the passage and ratification of Amendment No. 508 was and is the lottery of "bingo." ' "
City of Piedmont v. Evans, 642 So.2d 435, 436 (Ala. 1994) (quoting trial court's order). Amendment No. 508 does not define bingo, but rather refers only to "[t]he operation of bingo games" in Calhoun County. It makes the operation of bingo games in Calhoun County subject to the provisions of resolutions or ordinances of Calhoun County or the cities in Calhoun County.
The appellant contends that the City of Piedmont's municipal ordinance no. 429, authorizes *Page 537 
the operation of bingo games. Municipal ordinance no. 429, § II(a) defines ("bingo") as follows:
 "Bingo. That specific kind of game, or enterprise, commonly known as 'bingo,' in which prizes are awarded on the basis of designated numbers, or symbols, which are drawn, at random, by the operator of said game and which are placed by the persons playing, or participating in said game, on cards, or sheets or paper, which contain, or set out, numbered spaces, upon which said designated numbers, or symbols, may be placed by the persons playing or participating in said game."
(C. 190). The ordinance also provides:
 "(a) Any qualified non-profit organization, as herein defined, may operate and conduct, 'bingo' games as herein defined, within this city, and its police jurisdiction, for prizes, or money, for charitable or educational purposes, to the extent and in the manner authorized by the provisions hereof and in accordance with Amendment 508, of the Constitution of Alabama, 1901."
Ordinance no. 429, § II(a) (R. 191).
The appellant contends that U-Pick-Em is a bingo game, because, he alleges, the specifics of the game match the technical specifications of the definition of bingo contained in the ordinance.
However, the record reveals that U-Pick-Em is operated differently from bingo. U-Pick-Em is played in the following manner: Each player pays to take a chance on winning the jackpot. The player is given a card containing the numbers 1 through 75. For $2.00, a player then chooses eight numbers on each card and returns the card to a computer operator who feeds the chosen numbers into a computer. The player can also elect to let the computer automatically choose the eight numbers. The computer then prints a piece of paper containing the eight numbers; that paper is given to the player. An announcer calls out 30 numbers; if any player matches each of the eight numbers in any given sequence, that player wins the grand prize. A player wins the jackpot if the eight numbers on his sheet of paper were called within the first 20 numbers. If no one wins the jackpot, the announcer continues reading randomly drawn numbers until one player's eight numbers are selected. That player wins a small prize. The patrons know in advance what the jackpot amount will be for the gaming night. The record shows that on the nights that the investigators were present the potential grand prize exceeded $10,000 and the consolation prize was $100, the jackpot was $10,800.
This court recently addressed the issues presented by this case in Barrett v. State, 705 So.2d 529 (Ala.Crim.App. 1996). In Barrett, Thomas Newell Barrett III, the floor manager of Frontier Palace bingo hall had been convicted of promoting gambling and possession of a gambling device. This court stated in Barrett:
 "We first acknowledge the fundamental principle that the ordinance must be construed in harmony with this state's strong public policy against lotteries as expressed in § 65 of the Alabama Constitution.
" '. . . .'
 " '. . . .An ordinance cannot prevail in conflict with state law except by provision of the state law itself. . . . The public policy of the state, if any, respecting the subject matter of the ordinance must be considered, since an ordinance inconsistent with the state's policy as written in its statutes is void.'
 "McQuillan, Municipal Corporations, § 20.41(3d ed. rev. 1988)." 705 So.2d at 532.
In construing ordinance 429 in Barrett, this court stated,
 "Even a layman could not assert in good faith that the technical definition in the ordinance is an attempt to expand the common, ordinary definition of the game of bingo. Moreover, as a matter of law, the City of Piedmont could not pass an ordinance that broadens the scope of the narrow exception to the prohibition of lotteries in the Alabama Constitution. See City of Piedmont v. Evans, 642 So.2d 435 (Ala. 1994); § 11-45-1, Code of Alabama 1975 (municipal ordinances must be consistent with state law). Construing the ordinance as a whole in harmony with strongly expressed *Page 538 
public policy, we hold that no expression in the ordinance can be construed to include anything other than the ordinary game of bingo."
705 So.2d at 532.
Likewise, we hold that, the game of U-Pick-Em is clearly not the game commonly known as bingo, but rather is a lottery. Because lotteries, other than the common game of bingo, are illegal in Calhoun County, the circuit court was not in error in finding that U-Pick-Em, or U-Quick-Pick-Em is an illegal lottery.
In addition, the appellant contends that the definition in the ordinance 429 is the only definition of bingo that has been articulated by any governmental entity whose jurisdiction includes the City of Piedmont and that the trial court should have applied that definition in determining whether U-Pick-Em was a legal bingo game or an illegal lottery.
Section 11-45-1, Ala. Code. 1975, states:
 "Municipal corporations may from time to time adopt ordinances and resolutions not inconsistent with the laws of the state to carry into effect or discharge the powers and duties conferred by the applicable provisions of this title and any other applicable provisions of law . . . ."
"A municipality has the authority to enact ordinances pursuant to its police powers, as long as the ordinances are consistent with the general laws of the state." Congo v. State,409 So.2d 475 (Ala.Crim.App. 1981), cert. denied, 412 So.2d 276 (Ala. 1982). While the appellant argues that his game should be judged by the Calhoun ordinance, it is clear that the Constitution of the State of Alabama dictates the law of Alabama. Because the City of Piedmont lacked authority to enact an ordinance inconsistent with the Constitution of Alabama, the appellant's contention is without merit.
 II.
The appellant argues that because he relied on municipal ordinance 429, which defines lawful bingo, he was denied his right to due process embodied in the Fourteenth Amendment to the United States Constitution and Article I, §§ 6 and 13, Ala. Const. 1901. Specifically, the appellant argues that because he did not know U-Pick-Em was an illegal lottery, he cannot be punished. This court has held as a matter of law that the City of Piedmont could not pass an ordinance that broadens the scope of the narrow exception to the prohibition of lotteries in the Alabama Constitution. City of Piedmont v. Evans, 642 So.2d 435
(Ala. 1994). Further, a municipality's legislative authority is subordinate to the Constitution of Alabama 1901 and the provisions of the Alabama Code. Cities may only adopt ordinances "not inconsistent with the laws of the state." Ala. Code. 1975, § 11-45-1.
The appellant argues that because no one informed him that what he was doing was illegal he had no notice that his actions subjected him to possible prosecution. This court has stated: "See R.S.B. v. State, 632 So.2d 24, 26 (Ala.Crim.App. 1993) ('[i]gnorance of the law is no excuse'). . . . Contrary to the appellant's assertion, legal bingo was clearly defined, capable of a layperson's understanding as that game 'commonly known as "bingo." ' " Barrett, supra, 705 So.2d at 531. Accordingly, in this case, the appellant had proper notice and the convictions for promoting gambling and possession of a gambling device should be upheld.
 III.
The appellant contends that his constitutional rights were violated when he was denied a jury trial. The appellant was convicted in district court and he appealed to the circuit court for a trial de novo. (R. 52, 111.) The appellant did not request a jury trial when his notice of appeal to the circuit court was docketed on July 6, 1995. (R. 8, R. 246.) The appellant's newly retained counsel, Richard Jaffe, filed a written demand for a jury trial on November 2, 1995. (R. 26, 71.) The trial court denied the appellant's request, finding that he had waived his right to a jury trial. (R. 26.)
Alabama has required the timely demand for a jury trial in misdemeanor cases since the enactment of section 15-14-30, Ala. Code. 1975, which provides: *Page 539 
 "In all misdemeanor cases in the circuit court, the issues and questions of fact shall be tried by the judge of the court without the intervention of a jury except in cases where a trial by jury is demanded in writing by the defendant. Such written demand shall be filed in the case with the clerk of the court . . . within 30 days after the defendant has been arrested . . . or, within 30 days after the defendant has appealed if the case is brought to the circuit court by appeal. . . . A failure to demand in writing a trial by jury as provided in this section shall be held and deemed to be a waiver by the defendant of a trial by jury."
Rule 18.1(b)(2), Ala. R.Crim. P., requires that the demand for a jury trial in a misdemeanor case be timely filed. Rule 18.1(b)(2), Ala. R.Crim. P., provides:
 "When the defendant appeals for trial de novo in the circuit court, he or she must demand a jury trial in writing at the time of filing notice of appeal for trial de novo, or within seven (7) days thereafter. Failure of a defendant to make a timely demand for trial by jury shall be deemed to be a waiver by the defendant of his or her right to trial by jury."
It is settled law in Alabama that a jury trial is waived in misdemeanor cases by a failure to demand such a jury trial within the time prescribed by law. Wilson v. State,343 So.2d 586 (Ala.Crim.App. 1977). An examination of the record reveals that the appellants' demand for a jury trial was not timely. Thus, he waived his right to a jury trial.
The appellant also contends that he did not request a jury trial in his notice of appeal because of the alleged ineffective assistance of his initial trial counsel. His initial counsel withdrew from his representation of the appellant on November 29, 1995. (R. 51, 114.) Although the appellant's November 2, 1995, jury trial demand was denied, he did not allege that his failure to file a timely request for a jury trial was the result of ineffective assistance of counsel either in his motion for a jury trial or at the time of trial itself. (R. 8, 71.) Therefore, this issue is not preserved for review by this court.
We note additionally that Rule 18.1(b)(2), Ala. R.Crim. P., provides a defendant with an opportunity to seek relief from his waiver with the consent of the court. However, the facts in this case do not warrant relief, because the appellant had ample opportunity to object to proceeding without a jury, but did not do so. "A Defendant cannot invite error by his conduct and later profit by the error." Fountain v. State,586 So.2d 277, 282 (Ala.Crim.App. 1991). Therefore, this issue was not timely raised.
 IV.
The appellant contends that the court improperly admitted the search warrant and its supporting affidavit because, he says, it was introduced as evidence of the appellant's guilt. However, this issue is without merit.
At trial an investigator for the district attorney's office testified at length about the events contained in the affidavit. The appellant raised only a general objection to the introduction of the affidavit. (R. 145.) A general objection is insufficient to preserve error. McClellan v. State,452 So.2d 909, 910 (Ala.Crim.App. 1984). Even if the court erred in admitting the search warrant and supporting affidavit, that error is harmless, because it is clear from the record that the same information had been placed before the judge by the State before the affidavit was introduced into evidence. (R. 139-145.) McClellan v. State 452 So.2d 909, 911.
 V.
The appellant contends that the court erred in refusing to allow him to offer surrebuttal or, alternatively, to make an offer of proof. The record reveals that during the defense's case, defense counsel introduced two witnesses who testified to the effect that an assistant district attorney, Brian Howell, reviewed the legality of and then approved the game. Thereafter, the defense rested without putting the appellant on the stand. In the State's rebuttal, Brian Howell, denied that he had approved the game. The appellant requested that he be permitted to testify in surrebuttal. However, the trial judge would not permit the appellant to testify. Defense counsel then attempted to make an *Page 540 
offer of proof. The trial judge disallowed the offer of proof over objection of the appellant. (R. 186-88, 215.) The appellant stated in his affidavit in support of a motion for new trial:
 "I did not testify as a witness during the defense case. After the defense rested, the State called Assistant District Attorney Brian Howell to testify, at which time he denied offering prior approval to the 'U-Pick-Em' game before it was installed at Frontier Palace. This was a very important part of my defense. I consulted with my attorney . . . and I decided that if Mr. Howell testified and did not verify that he gave prior approval to the 'U-Pick-Em' game before its installation into the Frontier Palace, that I would testify in rebuttal to that."
(C. 49, 112.) Section 15-14-4, Ala. Code. 1975, states:
 "The court may, at its discretion, at any time before the conclusion of the argument when it appears to be necessary to the due administration of justice, allow a party to supply an omission in the testimony on such terms and under such limitations as the court may prescribe."
"The trial court properly confines rebuttal, and of course surrebuttal evidence to material within the scope of the preceding adverse evidence." Ellison v. State, 33 Ala. App. 405,34 So.2d 185, 187 (Ala.App. 1948). "It is within the discretion of the trial court to receive, in rebuttal, testimony which more properly should have been offered as part of the case in chief." Harris v. State 409 So.2d 1006, 1010 (Ala.Cr.App. 1982). "A trial court is clothed with wide discretion in the matter of permitting surrebuttal evidence, although the court's action in this regard is reviewable on appeal." Harris, 409 So.2d, at 1010.
The appellant complains that the trial court refused to permit him to testify that Howell approved the game. However, it was within the discretion of the court to conclude that it could resolve the question of Howell's credibility without permitting additional evidence. The court had a chance to observe Howell's demeanor as well as his response to questions from the appellant's counsel. Under the facts presented, it is apparent that additional testimony from the appellant was not essential to an evaluation of Howell's credibility.
Witnesses for the appellant testified that Howell approved the game. Thus, there was ample testimony regarding Howell's alleged approval of the game. It is clear that allowing further testimony regarding Howell's alleged approval would have been repetitious. It was within the court's discretion to disallow the appellant rebuttal or alternatively the opportunity to make an offer of proof. Even if the trial court erred, this error was harmless because the error complained has not injuriously affected the substantial rights of the appellant. Rule 45, Ala. R.App. P.
 VI.
The appellant contends that the court improperly denied his motion to disqualify the district attorney and his office from prosecuting the case. Specifically, the appellant argues that the issue whether the district attorney's office had approved U-pick-Em in a meeting organized for the purpose of confirming the legality of the game is disputed.
The appellant cites Tarver v. State, 492 So.2d 328
(Ala.Cr.App. 1986), wherein this court held that a prosecutor's action in taking the witness stand and giving sworn testimony as to the voluntariness of a defendant's confession was plain error. In Tarver, the district attorney not only prosecuted the State's capital murder case against the defendant, but he also took the stand and gave testimony that helped establish the validity of the defendant's confession. Id. at 329. This court has stated that a prosecutor is not allowed to assume the role of witness because of the enormous influence exerted on the jury by one holding office of district attorney. Gilchrist v.State, 534 So.2d 1120, 1121 (Ala.Crim.App. 1988). However, this case is clearly distinguishable from Tarver. In this case, Howell was not the prosecutor of record; he testified in rebuttal as the last witness in a nonjury trial. The crucial distinction in this case is that Howell was not the prosecutor. Therefore, there was no overlap of function between the prosecutor and witness. *Page 541 
In Barrett v. State supra, (Ala.Crim.App. 1996) this court addressed the issue whether the trial court erred when it refused to disqualify the district attorney and his office from prosecuting the case because an assistant district attorney, unconnected to the prosecution, testified in the state's rebuttal. This court, in Barrett, found this contention to be without merit. We also find that the court did not err in denying the appellant's motion to disqualify the district attorney and his office from prosecuting the case.
 VII.
The appellant contends that the trial court committed reversible error in denying his motion to dismiss and in denying his motion for a judgment of acquittal based on an alleged lack of jurisdiction. The appellant argues that the state court had no jurisdiction of this matter because he was indicted and brought to trial in a state court for an alleged violation of Piedmont City Ordinance No. 429. However, the appellant was not charged with violating a municipal ordinance. The appellant was charged with violating Ala. Code. 1975, §13A-12-22 and § 13A-12-27, both of which are Class A misdemeanors. Section 12-12-32(a), Ala. Code. 1975, gives the district court exclusive original trial jurisdiction over prosecutions of all offenses defined as misdemeanors. Section 12-11-39(3), Ala. Code. 1975, provides that appeals from criminal cases that originate in district court are to be heard in circuit court. Therefore, the trial court properly denied the appellant's motion to dismiss and his motion for judgment of acquittal based on lack of jurisdiction.
 VIII.
The appellant contends that the trial court committed reversible error when it failed to grant his motion for a judgment of acquittal because, he says, the evidence presented was insufficient to support a conviction for the charged offenses.
The appellant was convicted of promoting gambling, a violation of § 13A-12-22, Ala. Code. 1975, and of possession of a gambling device, § 13A-12-27, Ala. Code. 1975. Section13A-12-22, Ala. Code. 1975, states:
 "(a) A person commits the crime of promoting gambling if he knowingly advances or profits from unlawful gambling activity otherwise than as a player.
 "(b) Promoting gambling is a Class A misdemeanor."
Section 13A-12-27, Ala. Code. 1975, states:
 "(a) A person commits the crime of possession of a gambling device if with knowledge of the character thereof he manufactures, sells, transports, places or possesses, or conducts or negotiates any transaction affecting or designed to affect ownership, custody or use of:
"(1) A slot machine; or
 "(2) Any other gambling device, with the intention that it be used in the advancement of unlawful gambling activity.
 "(b) Possession of a gambling device is a Class A misdemeanor."
In determining whether the State presented a prima facie case, an appellate court must accept as true the evidence introduced by the State, accord the State all legitimate inferences from that evidence, and consider the evidence in the light most favorable to the State. Deutcsh v. State,610 So.2d 1212, 1234 (Ala.Crim.App. 1992.)
Sufficient evidence was presented to support the judge's findings. There was sufficient evidence that the appellant promoted gambling. The appellant was the facility manager and owner of Frontier Palace. (R. 12.) The appellant signed paychecks issued to employees of Frontier Palace. (R. 127.) Investigators from the district attorney's office observed the appellant on the floor at Frontier Palace while U-Pick-Em was being played. (R. 24, 27, 35.)
There was sufficient evidence that the appellant possessed a gambling device. The district attorney's investigator entered the Frontier Palace and purchased a U-Pick-Em slip generated by a computer. His investigation revealed that U-Pick-Em slips are generated by computer with either the "House" or the player picking the numbers. (R. 25.)
The State has established a prima facie case against the appellant for promoting gambling and for possessing a gambling device. *Page 542 
 IX.
The appellant contends that the trial court violated his right to due process when he was subjected to an excessive fine and a sentence of 12 months in the Calhoun County jail in violation of Article I, § 15, Ala. Const. 1901. However, this issue is not preserved for review.
Article I, § 15, of the Alabama Constitution of 1901 provides that "excessive fines shall not be imposed, nor cruel or unusual punishment inflicted." At the conclusion of the trial, the court imposed $2,000 in fines and sentenced the appellant to serve two concurrent one-year terms in the county jail, the maximum sentence provided for the offenses of promoting gambling, Ala. Code. 1975, § 13A-12-22, and possessing a gambling device, Ala. Code. 1975, § 13A-12-27.
The record reveals that before the court announced the sentence, and before deciding whether to grant probation, the court asked the appellant whether he wished to say anything. The defense attorney stated, "we would like to submit to the court some letters of recommendation for a sentencing hearing and probation hearing and a probation report." The judge stated, "I have already sentenced him . . . . [a]t that time you did not have anything else you wished to say before sentencing." (R. 247-49.) Defense counsel failed to raise a timely objection. Thus this issue is not preserved for review by this court.
The appellant also contends that the trial court improperly sentenced him without giving him an opportunity to have a probation or presentence investigation. However, the trial court has discretion in ordering a presentence report in misdemeanor cases. Rule 26.3(a), Ala. R.Crim. P. The judge properly exercised his discretion in this case.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
All the Judges concur.