156 So.2d 639

## OPINION OF THE JUSTICES.

### No. 179.

Supreme Court of Alabama.

Sept. 24, 1963.

Questions were propounded by the Governor to the Justices of the Supreme Court relating to the authority of the Governor to send law enforcement officers to localities where, in process of school desegregation, civil insurrection and sabotage are threatened, and, under certain circumstances to suspend operation of public schools in such localities. The Justices were of the opinion that the Governor is authorized by the Constitution to employ such forces as are available to him to keep the peace throughout the State; that the Governor is not authorized to open or close schools, but that if closing of schools be the actual and incidental result of keeping the peace, the power to keep the peace is not restricted.

Questions answered.
Honorable George C. Wallace
Governor of Alabama
State Capitol
Montgomery, Alabama

Dear Sir:

We are in receipt of your inquiry of September 9, 1963, which is as follows:

"To the Honorable Chief Justice and Associate Justices of the Supreme Court of Alabama
State Judicial Building
Montgomery, Alabama

"Gentlemen:

"Pursuant to the provisions of Code of Alabama, Title 13, Section 34, I respectfully request your opinion in connection with the following important constitutional questions:

"In several portions of the state, local school boards are presently under orders by

the Federal Judiciary to desegregate public school facilities and have proceeded to formulate and implement plans for the accomplishment of this purpose. Receiving reports of possible unquiet, civil disorder and possible acts of violence should the plans for such desegregation go into effect, I caused investigations to be made in these localities by state law enforcement personnel and have received their reports that in their opinion the attempts to desegregate the schools in the localities in question would presently, and in the immediate future probably and likely would result in violence, civil insurrection and sabotage, attendant with danger to lives of the students in the schools and to the lives of those in the immediate vicinity of such schools, and attendant with injury and damage to property of those in the locales in question, and that in their opinion these conditions will not be alleviated by the continued operation of the plans for desegregation but will tend to increase in the immediate future should such plans continue to be carried out. Bearing out the report of the investigators, desegregation attempts at schools in the City of Birmingham have been attended by actual mob violence and by injury to persons and by damage to property. From the intelligence received by me, I am apprehensive that continued attempts to carry out desegregation of the schools in the locales in question may well lead to homicides, assaults and batteries, civil insurrections and riots and damage to and destruction of property. In fulfilling my responsibility as Chief Magistrate of the State and as the one enjoined by the State Constitution to see to the faithful execution of its laws and the protection of its citizens and their lives and property, I have dispatched state law enforcement officers to the locales in question to preserve law and order and to prevent the occurrence of such crimes as are hereinbefore enumerated.

"Since some question has been encountered by my carrying out of what I conceive to be my duties, I request your answers to the following questions:

"1. Am I constitutionally authorized, under and by virtue of Sections 35, 112, 113, 120 and 131 of the Constitution of Alabama 1901, or either of them, or under and by virtue of a combination of said sections of the Constitution, to send state law enforcement officers to the locales in question under the circumstances outlined above to preserve law and order?

"2. Under the circumstances shown to exist above, would I be authorized, under the above cited sections of the Constitution of Alabama, to suspend operation of the public schools in question?

"Your prompt advice with respect to these questions will be most gratefully appreciated.

"Sincerely yours,

/s/ George C. Wallace
/t/ GEORGE C. WALLACE
Governor"

■ 1. Your first question, we answer in the affirmative.

Certainly the governor is authorized to employ such forces as are available to him to keep the peace throughout the length and breadth of this state.

■ This opinion is based on two sections of the Constitution of 1901, to wit, Section 120 and Section 131.

Section 120 recites:

"Sec. 120. The governor shall take care that the laws be faithfully executed."

■ The laws of the state contemplate domestic peace. To breach that peace is to breach the law, and execution of the laws demands that peace be preserved. The governor is charged with the duty of taking care that the laws be executed and, as a necessary consequence, of taking care that the peace be preserved.

Moreover, Section 131 of the Constitution recites:

"Sec. 131. The governor shall be commander-in-chief of the militia and volunteer forces of this state, except when they shall be called into the service of the United States, and he may call out the same to execute the laws, suppress insurrection, and repel invasion, but need not command in person unless directed to do so by resolution of the legislature; and when acting in the service of the United States, he shall appoint his staff, and the legislature shall fix his rank."

■ Section 131 contemplates that the governor shall employ even the military forces of the state to keep the peace, for the architects of our Constitution provided that the governor may call out those forces to execute the laws and suppress insurrection. If the governor may employ the military forces, certainly he may employ the civil forces to keep the peace.

2. Your second inquiry, we answer in the negative.

: Section 256 of the Constitution, as amended by Amendment CXI, ratified September 7, 1956, recites:

"Section 256. It is the policy of the state of Alabama to foster and promote the education of its citizens in a manner and extent consistent with its available resources, and the willingness and ability of the individual student, but nothing in this Constitution shall be construed as creating or recognizing any right to education or training at public expense, nor as limiting the authority and duty of the legislature, in furthering or providing for education, to require or impose conditions or procedures deemed necessary to the preservation of peace and order.

"The legislature may by law provide for or authorize the establishment and operation of schools by such persons, agencies or municipalities, at such places, and upon such conditions as it may prescribe, and for the grant or loan of public funds and the lease, sale or donation of real or personal property to or for the benefit of citizens of the state for educational purposes under such circumstances and upon such conditions as it shall prescribe. Real property owned by the state or any municipality shall not be donated for educational purposes except to nonprofit charitable or eleemosynary corporations or associations organized under the laws of the state.

"To avoid confusion and disorder and to promote effective and economical planning for education, the legislature may authorize the parents or guardians of minors, who desire that such minors shall attend schools provided for their own race, to make election to that end, such election to be effective for such period and to such extent as the legislature may provide."

■ Thus, it appears that the power to provide for the operation of schools is in the legislature. Without undertaking an exhaustive study of the legislative acts which provide for school operation, we are of opinion that the authority to open and close schools is placed in the local school board which operates the school, subject, perhaps to some supervision by the state board.

■ So far as we are advised, however, no legislative act places in the governor power to open or close schools. Consequently, we are of opinion that he has no power to open or close schools.

This is not to be understood as a restriction on the governor's power to keep the peace. That he must strive to do. If closing of the schools be the actual and incidental result of keeping the peace, the power to keep the peace is not restricted.

We are of the opinion, for the reasons stated above, that your power and duty to keep the peace are not limited by any of

the other provisions of the Constitution referred to in your inquiry.

Respectfully submitted,

J. ED LIVINGSTON
Chief Justice

THOMAS S. LAWSON
ROBERT T. SIMPSON
JOHN L. GOODWYN
PELHAM J. MERRILL
JAMES S. COLEMAN, Jr.
ROBERT B. HARWOOD

Associate Justices