MURDOCK, Justice.
The issue presented by this appeal and petition for the writ of mandamus is whether attorneys purportedly authorized by the governor to act in connection with a task force created to investigate allegedly illegal gambling devices and activities and to pursue prosecutions in relation to such devices and activities must have the permission of the attorney general, the local district attorney, and the county sheriff before pursuing an investigation or prosecution in a particular county. At least insofar as it concerns the attorney general and a district attorney, the same issue was addressed in Ex parte State (In re Riley v. Cornerstone Community Outreach, Inc.), 57 So.3d 704 (Ala.2010) (“Cornerstone”).

Facts and Procedural History

In December 2008, Governor Bob Riley issued Executive Order No. 44 creating the Governor’s Task Force on Illegal Gambling (“the Task Force”). In part, Executive Order No. 44 states:
“WHEREAS, Article IV, Section 65 of the Constitution of Alabama of 1901 provides: ‘The legislature shall have no power to authorize lotteries or gift enterprises for any purposes, and shall pass laws to prohibit the sale in this state of lottery or gift enterprise tickets, or tickets in any scheme in the nature of a lottery ...;’ and
[[Image here]]
“WHEREAS, the Supreme Court of Alabama has held that bingo is a form of lottery and is therefore illegal in Alabama, except where expressly authorized by a constitutional amendment. See City of Piedmont v. Evans, 64So.2d 435, 436-37 (Ala.1994); and the conduct of bingo, within specified parameters, is authorized in 16 counties *834 and two municipalities by local constitutional amendments, none of which, however, defines ‘bingo;’ and
“WHEREAS, in 1997, in a unanimous opinion authored by now-Chief Justice Sue Bell Cobb, the Alabama Court of Criminal Appeals ruled that where bingo is authorized but not otherwise defined by local constitutional amendment, ‘bingo’ means nothing other than ‘the ordinary game of bingo;’ the Court upheld the appellant’s conviction and 12-month prison sentence for promoting gambling and possession of a gambling device where the appellant had contended that the gambling activity he operated was ‘bingo’ within the meaning of the local constitutional amendment and local ordinance; and the Court, acknowledging ‘this state’s strong public policy against lotteries as expressed in § 65 of the Alabama Constitution,’ declared that bingo is a ‘narrow exception to the prohibition of lotteries in the Alabama Constitution’ and, accordingly, held that ‘no expression in [an] ordinance [governing the operation of bingo] can be construed to include anything other than the ordinary game of bingo’ lest the ordinance be ‘inconsistent with the Constitution of Alabama.’ See Foster v. State, 705 So.2d 534, 537-538 (Ala.Crim.App.1997) ...; and
[[Image here]]
“WHEREAS, it is common knowledge that, notwithstanding the clear holding of Foster, there is occurring at sites across this State, under the name of ‘bingo,’ gambling activity which no reasonable observer could assert in good faith to be ‘the ordinary game of bingo,’ particularly slot-machine style gambling in which an electronic device or system automatically processes an instant game of virtual ‘bingo’ upon activation and a wager by the human player, the outcome of which is based predominantly on chance rather than on any meaningful human interaction or skill; and
“WHEREAS, regardless of the ‘game’ in question, the possession of slot machines and gambling devices is illegal in all 67 counties in Alabama pursuant to Section 13A-12-27, Code of Alabama 1975, which provides: ‘A person commits the ci’ime of possession of a gambling device if with knowledge of the character thereof he manufactures, sells, transports, places or possesses, or conducts or negotiates any transaction affecting or designed to affect ownership, custody or use of: (1) A slot machine; or (2) Any other gambling device, with the intention that it be used in the advancement of unlawful gambling activity;’ and
[[Image here]]
“WHEREAS, in 2006, the Supreme Court of Alabama ruled that machines which ‘look like, sound like, and attract the same class of customers as conventional slot machines, and, when integrated with the servers, serve essentially the same function as [ ] slot machines,’ are illegal slot machines and further reaffirmed that ‘Alabama’s gambling law is not so easily evaded. It is “the policy of the constitution and laws of Alabama [to prohibit] the vicious system of lottery schemes and the evil practice of gaming in all their protean shapes.” ’ Barber v. Jefferson County Racing Association, Inc., 960 So.2d 599, 614 (Ala.2006) ... (citations omitted); and
“WHEREAS, notwithstanding the Alabama Supreme Court’s clear, emphatic, and repeated remonstrations against every artful attempt to circumvent Alabama’s anti-gambling laws, there is an obvious lack of uniformity in the enforcement of these laws from county to county — a state of affairs which has produced serious confusion about which activities are lawful and which are not, and which is being exploited by gambling’s promoters to ex *835 pand and entrench illegal gambling activity in Alabama;
“NOW THEREFORE, I, Bob Riley, Governor of the State of Alabama, by virtue of the authority vested in me by the Constitution and laws of Alabama, and for other good and valid reasons, which relate thereto, do hereby establish the Governor’s Task Force on Illegal Gambling for the purpose of promoting and supporting uniform statewide enforcement of Alabama’s anti-gambling laws and to carry out the Alabama Constitution’s strong public policy against lottery schemes and illegal gambling.
“BE IT FURTHER ORDERED, that the Task Force shall be composed of the Director of the Department of Public Safety and such agents and investigators as he or she shall designate, the Administrator of the Alcoholic Beverage Control Board and such agents and investigators as he or she shall designate, and a supernumerary district attorney, who shall be appointed by the Governor as a Special Prosecutor and who shall serve as the Task Force Commander.
“BE IT FURTHER ORDERED, that the Task Force shall serve as a resource for local prosecutors and law enforcement officials who request assistance in the investigation and prosecution of gambling-related crimes. The Task Force may provide technical assistance, investigative support, law enforcement personnel, and any other assistance requested by local authorities reasonably necessary to enforce Alabama’s anti-gambling laws.
“BE IT FURTHER ORDERED, that the Special Prosecutor, pursuant to Section 12-17-216, Code of Alabama 1975, shall have statewide jurisdiction and is hereby authorized, with the support of the Task Force, to conduct investigations, attend any regular, adjourned or special session of any circuit court in any of the judicial circuits of Alabama for the investigation of or the prosecution of any criminal case or the prosecution or defense of any case related to gambling activity in the State of Alabama.”
See Ala.Code 1975, § 86-18-9 (governor’s power to issue executive orders).
By letter dated December 29, 2008, Governor Riley appointed former Jefferson County District Attorney David Barber as commander of the Task Force and, in relation thereto, as a special prosecutor to investigate and prosecute illegal gambling activities throughout the State. In January 2010, following Barber’s resignation from his positions as commander and special prosecutor, Governor Riley issued an order amending Executive Order No. 44. The amending order states:
“BE IT FURTHER ORDERED that the Governor, whenever he deems it proper or necessary, may alter the membership of the Task Force by removing any member thereof, filling any vacancy, or appointing additional members thereto, as he sees fit, and may appoint any member to serve as Task Force Commander.
“BE IT FURTHER ORDERED that in addition to or in lieu of any other appointments authorized or contemplated by Executive Order Number 44 or under applicable law, and pursuant to Section 12-17-184(10), Code of Alabama 1975, the Governor may appoint and authorize any district attorneys and any assistant district attorneys in the State of Alabama to serve as Special Prosecutor or Assistant Special Prosecutors and, as such, ‘[t]o go to any place in the State of Alabama and prosecute any case or cases, or work with any grand jury, ... and to attend sessions of courts and transact all of the duties of the district attorney in the courts’ with respect to any investigations or cases relating to *836 gambling activity in the State of Alabama.
[[Image here]]
“BE IT FURTHER ORDERED that no provision of Executive Order Number 44 shall be construed as limiting the jurisdiction or the authority of the Special Prosecutor, an Assistant Special Prosecutor, or the Task Force or its members, to fulfill their responsibilities under applicable law, including those assigned by the Governor pursuant to relevant statutory or constitutional authority.”
Thereafter, Governor Riley issued a letter appointing Mobile County District Attorney John M. Tyson, Jr., as special prosecutor for and counsel to the Task Force. The appointment letter states:
“I formally request that you serve as Special Prosecutor and counsel for the Task Force in all cases involving the Task Force or its enforcement of laws regarding illegal gambling, and that you go to any place in the State of Alabama and attend to and prosecute each such case, work with any grand jury in any such case or when otherwise called upon to do so by the Governor of the State of Alabama, and attend sessions of court and transact all of the duties of the district attorney in the courts in all such cases, and in any others whenever called upon by the Governor to do so, pursuant to Section 12-17-184(10) of the Code of Alabama (1975).
“I also formally request that you appear as Special Prosecutor and counsel for the Task Force in the trial and appellate courts and before all magistrates and judges in all cases or proceedings involving the Governor’s Task Force on Illegal Gambling or its law enforcement activities regardless of where in the State of Alabama the cases or proceedings may occur or be initiated, and regardless of what appellate courts may hear appeals or petitions for writs in such cases.”
Among other appointments relating to the Task Force,[1] Governor Riley also appointed Martha Tierney, an assistant district attorney for Mobile County, to serve as special prosecutor for and counsel to the Task Force pursuant to § 12-17-184(10), Ala.Code 1975.
The context for these proceedings is summarized in Tyson v. Macon County Greyhound Park, Inc., 43 So.3d 587 (Ala.2010), as follows:.
“[On January 29, 2010,] Macon County Greyhound Park, Inc., d/b/a Victory-Land (hereinafter ‘VictoryLand’), commenced an action in the Macon Circuit Court against John M. Tyson, Jr., individually and in his official capacity as special prosecutor and task force commander of the Governor’s Task Force on Illegal Gambling pursuant to Executive Order No. 44 (hereinafter ‘Tyson’), seeking injunctive and declaratory relief stemming from Tyson’s arrival at the premises of VictoryLand without a search warrant in the early morning hours of January 29, 2010, for the purpose of seizing machines that, Tyson says, are illegal gambling devices.”
43 So.3d at 588. After the Macon Circuit Court entered an order barring further action by Tyson pending a hearing, Tyson sought relief from this Court. In Macon County Greyhound Park, we concluded that the circuit court lacked subject-matter jurisdiction to interfere with the law-enforcement actions by Tyson and the Task Force; we vacated the circuit court’s order, and we dismissed the action and the appeal. 43 So.3d at 591. VictoryLand, *837 the gaming facility operated by Macon County Greyhound Park, Inc., promptly ceased its operations and closed its doors to the public.
On March 5, 2010, following our decision in Macon County Greyhound Park, Macon County District Attorney E. Paul Jones, Macon County Sheriff David Warren, the Macon County Commission, and three Macon County citizens (Johnny Ford, Robert Freeman, and Stanley Maxwell)(hereinafter referred to collectively as “the Macon County plaintiffs”) filed a “Verified Complaint Seeking Petition For.Writ of Quo Warranto, Temporary Restraining Order, Declaratory Judgment, and Preliminary and Permanent Injunction”'in the Macon Circuit Court. Tyson, who was named in the complaint as a defendant individually and in his official capacity as special prosecutor for and commander of the Task Force, was the only named defendant. The complaint alleged that Tyson had “raided VietoryLand in Macon County and continues to threaten to take action in Macon County.” It sought, among other things, an order enjoining Tyson from
“serving as Special Prosecutor and Task Force Commander for the Governor’s Task Force ... and preventing Tyson or any other Task Force agent from taking action to: (i) usurp the authority and prosecutorial discretion vested in the duly elected and qualified District Attorney for Macon County; (ii) usurp the authority of the Sheriff of Macon County; or (iii) usurp the authority of the duly elected and qualified Attorney General of the State of Alabama.”
In addition, the complaint sought, on behalf of the State, a writ of quo warranto to prevent Tyson from serving as special prosecutor and Task Force commander and to prevent him from “attempting to usurp the authority and prosecutorial discretion vested in the duly elected and qualified District Attorney for Macon County.”
Based on the materials submitted in the current appellate proceedings, we also note that, despite this Court’s decision in Macon County Greyhound Park, District Attorney Jones filed a separate declaratory-judgment action seeking a determination by the circuit court as to the legality of electronic-bingo operations in Macon County in light of Amendment No. 744, Ala. Const.1901 (now Local Amendments, Macon County, § 1, Ala. Const. 1901 (Off. Recomp.)). The circuit court case number assigned to District Attorney Jones’s declaratory-judgement action is CV-2010-016; thus, it apparently was filed soon after, if not in conjunction with, the present case, which was assigned circuit court case number CV-2010-015.[2]
On the same day the complaint was filed in the present case, the circuit court entered a temporary restraining order stating that Tyson “his agents, servants, employees, attorneys, members of the Task Force and anyone acting in concert with any of the foregoing shall not interfere with public access to any business by presence or action, or search or seize any property, in Macon County or any county other than Mobile County.” The effective time for the order as stated therein was *838 12:45 p.m. VictoryLand resumed operations and reopened at 1:00 p.m. on that day, consistent with an announcement by it to that effect the previous day.
After a proceeding concerning whether a preliminary injunction should issue at which ore tenus evidence was presented, the circuit court entered an order on March 22, 2010, granting preliminary in-junctive relief to the Macon County plaintiffs. The order states:
“At issue in this case is whether John M. Tyson, Jr., the sitting District Attorney for Mobile County, has exceeded his authority and usurped or intruded into the office and the role of E. Paul Jones, the elected and sitting District Attorney for Macon County. Petitioners specifically requested relief to (i) prevent Mr. Tyson from serving as the 'Commander5 of the Governor’s Task Force on Illegal Gambling (‘Task Force5); and (ii) prevent Mr. Tyson and Task Force agents under his direction and control from usurping the authority and prosecutorial discretion vested in the Sheriff and District Attorney for Macon County and the Attorney General for the State of Alabama. This Verified Complaint does not contain any request that this Court make a determination whether electronic bingo is legal in Macon County or whether any particular machines are ‘slot machines. 5 This action presents the Court with a dispute over the scope of authority of law enforcement officials which may well implicate the constitutional rights of Macon County residents, as well as the statutory division of duties among members of Alabama’s executive branch.”
(Emphasis added.) The circuit court then discussed whether the Macon County plaintiffs “have established a substantial likelihood of success on the merits of their Verified Complaint, and their entitlement to a writ of quo warranto under Alabama Code Section 6-6-591.55 After quoting that portion of Executive Order No. 44 regarding the provision by the Task Force of assistance to local law-enforcement officers, the circuit court noted that “neither Jones nor Warren have requested Mr. Tyson’s assistance in conducting any investigation or criminal prosecution.” The circuit court continued:
“According to the testimony of Mr. Tyson, Executive Order No. 44 and its Amendment gave Riley the authority to appoint any district attorney of assistant district attorney to the Task Force pursuant to the provisions of Alabama Code Section 12-17-184(10), which permits such district attorney to:
“ ‘go to any place in the State of Alabama and prosecute any case or cases, or work with any grand jury, when called upon to do so by the Attorney General or the Governor of the State of Alabama, and to attend sessions of courts and transact all of the duties of the district attorney in the courts whenever called upon by the Attorney General or the Governor to do so.
“Ala.Code § 12-17-184(10) (emphasis added).
“However, section 12-17-184(10) does not give a district attorney elected to serve Mobile County the authority to initiate criminal investigations in Macon County. Section 12-17-184(10) must also be read in pari materia with Ala. Code § 12-17-184(11) as he is acting outside of Mobile County and exerting control over officers and agencies outside of his jurisdiction. Ala.Code § 12-17-184(11) states:
“ ‘All district attorneys and all full-time assistant district attorneys shall devote their entire time to the discharge of the duties of their respective offices, and each and every one of the officers are prohibited from prac *839 ticing law, directly or indirectly, in any court of this state or of the United States, or in any other manner or form whatsoever, except in the discharge of the official duties of their offices.’
“Ala.Code § 12-17-184(11).
“Evidence submitted during the hearing establishes that District Attorney Jones has exercised his prosecutorial discretion to determine the best course of action for the citizens of Macon County in the investigation and prosecution of any case related to electronic bingo in Macon County. There has been no evidence that District Attorney Jones has exercised his discretion in bad faith or for corrupt motives. Mr. Tyson testified that the reason the Task Force has entered Macon County is because Mr. Tyson and Governor Riley believe that District Attorney Jones has failed or refused to prosecute electronic bingo cases.
“While Governor Riley and Mr. Tyson may not agree with the investigatory or prosecutorial discretion District Attorney Jones has exercised, neither Mr. Tyson nor Governor Riley [has] the authority to substitute their judgment for the judgment of District Attorney Jones. The office of District Attorney, like the Governor and the Attorney General, is a constitutional office. Along with the Attorney General, it is the obligation of the District Attorney to expose and prosecute crimes. ‘The district attorney is a public officer representing the sovereign power of the people and has been defined as the foremost representative of the executive branch of government in the enforcement of the criminal law in his county.’ State v. Anderson, 8 So.3d 1033, 1036 (Ala.Crim.App.2008). To allow Mr. Tyson and the Task Force to enter Macon County for the purpose of investigating a matter which is the subject of an ongoing investigation by the duly elected district attorney for the Fifth Judicial Circuit would constitute an invasion and interference with said ongoing investigation and would result in constitutional chaos.
“The District Attorney is vested with broad prosecutorial discretion to perform his duties of exposing and prosecuting crimes. Indeed, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, rests entirely in [the district attorney’s] discretion. In other words, the duty to prosecute is not absolute, but qualified, requiring of the prosecuting attorney only the exercise of a sound discretion, which permits him to refrain from prosecuting whenever he, in good faith and without corrupt motives or influences, thinks that a prosecution would not serve the best interests of the state, or that, under the circumstances, a conviction could not be had, or that the guilt of the accused is doubtful or not capable of adequate proof.
“According to the evidence presented, District Attorney Jones has determined what he considers to be the best way to proceed in this matter and his discretion is not subject to second-guessing by Mr. Tyson or Governor Riley. The statutory authority to direct and control litigation when representing the State has been exclusively delegated to Alabama Attorney General — not the Governor or a special prosecutor: ‘[a]ll litigation concerning the interest of the state, or any department of the state, shall be under the direction and control of the Attorney General....’ Ala.Code § 36-15-21. In fact, the authority to superintend litigation is left in the sole discretion of the Attorney General because the Attorney General is the chief law officer of the State. Alabama Code § 36-15-14 provides that the Attorney General — not the Governor or a special prosecutor *840 appointed by him — ‘may at any time he sees proper, either before or after indictment, superintend and direct the prosecution of any criminal case in any of the courts of this state.’
“Mr. Tyson testified that he and the Governor had no confidence that District Attorney Jones would enforce the rule of law in Macon County and that District Attorney Jones was refusing to act. While no evidence was presented to support the contention that District Attorney Jones has refused to perform the duties of his office, Alabama Code § 12-17-186(a) provides the mechanism for when a district attorney refuses to act:
“ ‘The presiding judge of the circuit court, the district court or the municipal court, when the district attorney or assistant district attorney regularly required by law to prosecute criminal cases in such court is absent, or connected with the party against whom it is his duty to appear ... or when there is a vacancy in the office from any cause, or when the district attorney refuses to act, may appoint a competent attorney to act in such district attorney’s place....’
“Ala.Code § 12-17-186(a). In fact evidence [was] presented which established that District Attorney Jones has an ongoing investigation into these matters. Under the law, then, if District Attorney Jones had failed to perform the duties of his office, the proper course of action would have been to have a judge appoint an attorney to act in his place. The Code does not permit Mr. Tyson to assume District Attorney Jones’ duties even if he failed to perform them, and it certainly does not authorize Tyson to usurp them because he and the Governor do not agree with the manner in which Jones has chosen to conduct his investigation and litigation strategy. Therefore, Petitioners have met their burden at the preliminary injunction stage of establishing a reasonable chance of success on the ultimate merits of their case.”
The circuit court further stated:
“Under Alabama law, if Jones is rendered unable to perform the official duties and obligations of his position as District Attorney for Macon County because Mr. Tyson acts outside his powers or otherwise exceeds his authority, irreparable harm will have been caused.... Mr. Tyson is not harmed by an order precluding him from taking unlawful actions, while the residents of Macon County will be deprived of constitutional rights and the services of their duly-elected law enforcement officials if • the injunction does not issue. The executive branch had notice of the nature of the machines which underlay the investigation at issue in this case five years ago. Therefore, the executive branch cannot claim that it is somehow suffering immediate harm.”
The circuit court then concluded that
“a preliminary injunction is necessary in the instant case to prevent Mr. Tyson from taking actions for which he lacks authority; from his efforts to usurp the authority and prosecutorial discretion vested in Jones, the duly-elected and qualified District Attorney for Macon County; and from efforts to usurp the authority of the Sheriff of Macon County, or the Attorney General of the State of Alabama.
“... The Court finds that Mr. Tyson has not initiated any criminal proceedings in Macon County pursuant to Alabama Code 1975 § 15-3-7 and Rule 2.1 of the Alabama Rules of Criminal Procedure, and that this Order does not enjoin any valid or authorized criminal proceedings.
“... [Tyson], his agents, servants, employees, attorneys, members of the Gov *841 ernor’s Task Force on Illegal Gambling established pursuant to Executive Order No. 44 (‘Task Force’), and anyone acting in concert with any of the foregoing, shall not take any actions in or directed to Macon County on behalf of the Task Force, pursuant to Executive Order No. 44, as amended, or in furtherance of the objectives of Executive Order No. 44, as amended, absent a specific request for such actions from the duly-elected District Attorney or Sheriff for Macon County or a specific directive from the Attorney General of the State of Alabama.
“... This Order does not prohibit [Tyson] from defending himself in this action or any other action filed against him in the courts in and for Macon County.
“... This Order does not prohibit agents of the Alabama Beverage Control Board or agents of the Department of Public Safety from conducting authorized law enforcement operations (i) that are not performed in concert with, in connection with, or at the request or direction of Mr. Tyson or the Task Force in Macon County; or (ii) that do not otherwise impinge upon or interfere with the investigations into electronic bingo in Macon County being undertaken by Jones and Warren, or that are contrary to the prosecutorial discretion exercised by Jones.
“... [Tyson] is directed to provide a copy of this Order to his agents, servants, employees, attorneys, and members of the Task Force and anyone acting in concert with any of the foregoing.”
We also note the Macon County plaintiffs objected to Mobile County Assistant District Attorney Martha Tierney’s appearance as counsel for Tyson in the underlying action “in her role as an attorney for the Task Force.” The circuit court also entered a separate order on March 22, 2010, stating:
“Tierney is an assistant district attorney for Mobile County, Alabama. As such, her duties are set forth in Alabama Code Section 12-17-184. Section 12-17-184(10) does not authorize Tierney to defend Tyson in this Macon County action. That Section only allows for the prosecution of cases by assistant district attorneys and does not permit defending cases. Cf. § 12-17-184(3).
“Additionally, Section 12-17-184(11) requires Tierney to devote her ‘entire time to the discharge of the duties’ of her office and prohibits her from practicing law in any court of this state ‘except in the discharge of [her] official duties.’ Tierney is not permitted to represent Tyson personally, on her own time, and is required to be working in the district in which she was hired.
“Moreover, Alabama Code Section 36-15-1 provides that ‘Any statute to the contrary notwithstanding, no attorney shall represent the State of Alabama, or any agency, department, or instrumentality of the state in any litigation in any court or tribunal unless the attorney has been appointed as a deputy attorney general or assistant attorney general.’ Tierney has presented no evidence that she has been appointed as a deputy attorney general or assistant attorney general. Thus, Tierney cannot claim that she represents the State or any agency of the State in this litigation. Indeed, Petitioners here have not sued the State or any such state agency. The only respondent named in this action is Tyson.”
(Emphasis added.) The circuit court then concluded that “Tierney may not properly represent Tyson in his individual capacity in this action,” “that Tierney is not authorized to represent Tyson in his capacity of Special Prosecutor and Commander of the *842 Governor’s Task Force on Illegal Gambling in this action,” and that “[a]ll pleadings and submissions made by Tierney in this matter constitute a legal nullity.”
Tyson filed an appeal from the March 22 order granting preliminary injunctive relief (case no. 1090878), and he filed a petition for a writ of mandamus challenging the March 22 order holding that Assistant District Attorney Tierney is not authorized to defend Tyson in the underlying action (case no. 1090939). We have consolidated the appeal and the petition for the writ of mandamus for the purposes of this opinion.[3]

The Appeal (case no. 1090878)

Subject-Matter Jurisdiction

Tyson argues in the appeal that the preliminary injunction is due to be vacated on the ground that the circuit court lacked subject-matter jurisdiction to enjoin the enforcement of criminal laws.[4] In the alternative, he argues that the order issuing the preliminary injunction should be reversed because, he says, the circuit court erred as a matter of law when it concluded that the Macon County plaintiffs have a likelihood of success on the merits and that they would suffer irreparable injury if the Task Force enforces the law. Tyson also contends that the circuit court exceeded its discretion when it concluded that the hardship imposed upon the Task Force by the issuance of the injunction would not unreasonably outweigh the benefit to the Macon County plaintiffs.
Tyson is correct in his argument that a court generally has no jurisdiction to enjoin law enforcement in the performance of its investigatory and prosecutorial functions. Macon County Greyhound Park, 43 So.3d at 589-90. This case, however, does not inquire into the merits of such law-enforcement activities.[5] Instead, this case presents a quo warranto action in which it is alleged that an individual, Tyson, purports to exercise rights, authorities, or duties vested in the district attorney and sheriff of Macon County and that asks by “what warrant” he does so.
Section 6-6-591(a)(l), Ala.Code 1975, describes a quo warranto action as follows:
*843 “An action may be commenced in the name of the state against the party offending in the following cases:
“(1) When any person usurps, intrudes into or unlawfully holds or exercises any public office, civil or military, any franchise, any profession requiring a license, certificate, or other legal authorization within this state or any office in a corporation created by the authority of this state.”
In State ex rel. Gray v. King, 395 So.2d 6, 7 (Ala.1981), this Court stated:
“A public office is the right, authority, and duty, created by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public. Lacy v. State, 13 Ala.App. 212, 68 So. 706 (1915). Constitutionally, the term ‘public office’ implies an authority to exercise some portion of the sovereign power, either by enacting, executing or administering the laws.”
Thus, like Cornerstone, the present case inquires into the division of duties and the respective spheres of authority of the governor and attorneys acting at his designation, on the one hand, and that of the attorney general and a district attorney (and, in this case, a sheriff), on the other hand. We therefore reject Tyson’s subject-matter-jurisdiction argument as to the quo warranto claim presented here and as to the injunctive relief issued by the circuit court in aid of its jurisdiction over that claim.[6]

Standard of Review

The appeal before us calls into question the propriety of the preliminary injunction issued by the circuit court. As to questions of fact, the ore tenus rule is applicable in preliminary-injunction proceedings. See, e.g., King v. Head Start Family Hair Salons, Inc., 886 So.2d 769, 770 n. 1 (Ala.2004). As this Court noted in Holiday Isle, LLC v. Adkins, 12 So.3d 1173, 1176 (Ala.2008), however,
“[t]o the extent that the trial court’s issuance of a preliminary injunction is grounded only in questions of law based on undisputed facts, our longstanding rule that we review an injunction solely to determine whether the trial court exceeded its discretion should not apply. We find the rule applied by the United State Supreme Court in similar situations to be persuasive: ‘We review the District Court’s legal rulings de novo and its ultimate decision to issue the preliminary injunction for abuse of discretion.’ Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 428, 126 S.Ct. 1211, 163 L.Ed.2d 1017(2006)....”
The requirements for a preliminary injunction are well known:
“ ‘Before entering a preliminary injunction, the trial court must be satis *844 fied: (1) that without the injunction the plaintiff will suffer immediate and irreparable injury; (2) that the plaintiff has no adequate remedy at law; (3) that the plaintiff is likely to succeed on the merits of the case; and (4) that the hardship imposed upon the defendant by the injunction would not unreasonably outweigh the benefit to the plaintiff.’ ”
Blount Recycling, LLC v. City of Cullman, 884 So.2d 850, 853 (Ala.2003) (quoting Blaylock v. Cary, 709 So.2d 1128, 1130 (Ala.1997)).
The circuit court concluded that the foregoing requirements were met and, in particular, that there was “a substantial likelihood of success on the merits” as to the Macon County plaintiffs’ contention that Tyson has wrongfully usurped and intruded into the offices of Attorney General King, District Attorney Jones, and Sheriff Warren. We must reject the circuit court’s conclusion as based on a misapprehension of applicable law. We pre-termit discussion of the remaining issues. Analysis
We first consider that aspect of the circuit court’s rationale relying upon Ala. Code 1975, §§ 12-17-184(11) and -186(a). Neither § 12-17-184(11) nor § 12-17-186(a) serve to limit Tyson, Assistant District Attorney Tierney, or other officers of the Task Force who are acting at the direction of Governor Riley. Section 12-17-184(11) merely requires that district attorneys shall devote their “entire time to the discharge of the duties of their respective offices.”[7] As discussed in Cornerstone, Tyson’s prosecution of cases such as the one presented here, when duly called upon by the governor pursuant to § 12-17-184(10), is in fact one of “the duties of [his] office.” 57 So.3d at 719. Section 12-17-186(a) merely provides the mechanism and criteria by which local judges can appoint an attorney to act in the stead of a local district attorney.[8] It does not countermand the authority under which Governor Riley acted to employ Tyson in this case.
In their brief to this Court, the Macon County plaintiffs argue that District Attorney Jones and Sheriff Warren did not request assistance in Macon County and that there is no evidence indicating that District Attorney Jones failed or refused to enforce the laws against illegal gambling. They further argue that Tyson, Assistant District Attorney Tierney, and Supernumerary District Attorney Morgan have not been requested to act by Attorney General King: “[A]ny action taken in Macon County by Tyson, and those acting in concert with him or pursuant to his direction or instructions, is in contravention of the authority of the Attorney Gen *845 eral and the discretion of the local district attorney.” They argue:
“Like the Governor and the Attorney General, the office of District Attorney is a constitutional office. See Cole v. State, 337 So.2d 40, 46 (Ala.[Crim.App.] 1974); Ala. Const. Art. VI, § 160(a). Along with the Attorney General, it is the obligation of the District Attorney to expose and prosecute crimes. See Ex parte White, 300 So.2d 420, 433 (Ala.Crim.App.1974), cert. denied 300 So.2d 439 (Ala.1974). In performing this constitutional function of exposing and prosecuting crimes, the District Attorney is vested with broad prosecutorial discretion. Piggly Wiggly No. 208, Inc. v. Dutton, 601 So.2d 907, 910 (Ala.1992). As recognized by this Court,
“ ‘the decision whether or not to prosecute, and what charge to file or bring before a grand jury, rests entirely in [the District Attorney’s] discretion. In other words, the duty to prosecute is not absolute, but qualified, requiring of the prosecuting attorney only the exercise of a sound discretion, which permits him to refrain from prosecuting whenever he, in good faith and without corrupt motives or influences, thinks that a prosecution would not serve the best interests of the state, or that, under the circumstances, a conviction could not be had, or that the guilt of the accused is doubtful or not capable of adequate proof.’
“Id. (quoting 63A Am.Jur.2d Prosecuting Attorneys § 24 (1984)).”
The argument of the Macon County plaintiffs is akin to the arguments we considered in Cornerstone, in particular the arguments made on behalf of the attorney general and the district attorney of Lowndes County in that case. We again reject such arguments.
As we were in Cornerstone, we are presented with the unusual circumstance of the governor of this State making a judgment that the laws concerning illegal gambling were not being enforced in certain counties in this State, including Macon County.[9] Governor Riley also determined that the lack of enforcement in such counties, and the resulting lack of uniform enforcement of the laws, has “produced serious confusion about which activities are lawful and which are not” and that the confusion is “being exploited by gambling promoters to expand and entrench illegal gambling activities in Alabama.” Therefore, as explained in Cornerstone, “[i]n an attempt to fulfill his charge to ‘take care that the laws be faithfully executed,’ ... Governor Riley has directed certain law-enforcement officers who have been placed at his disposal by law to investigate and prosecute alleged gambling activity.” 57 So.3d at 718.
In Cornerstone, we began our examination of the relevant constitutional and statutory provisions as follows:
“Article V of the Alabama Constitution of 1901 creates and defines the ‘executive department’ of government. Section 112 of that article provides: ‘The executive department shall consist of a governor, lieutenant governor, attorney-general, state auditor, secretary of state, state treasurer, superintendent of education, commissioner of agriculture and industries, and a sheriff for each county.’[10] The very next provision of that *846 article states as follows: ‘The supreme executive power of this state shall be vested in a chief magistrate, who shall be styled “The Governor of the State of Alabama.” ’ Ala. Const.1901, § 113.... Section 120 of that article then provides that ‘[t]he governor shall take care that the laws be faithfully executed.’ Ala. Const.1901, § 120.... As hereinafter discussed, these express constitutional provisions, all of which are of course unique to the office of governor, plainly vest the governor with an authority to act on behalf of the State and to ensure ‘that the laws [are] faithfully executed’ that is ‘supreme’ to the ‘duties’ given the other executive-branch officials created by the same constitution. See generally Black’s Law Dictionary 970 (8th ed. 2004) (defining a ‘magistrate’ as ‘[t]he highest-ranking official in a government, such as the king in a monarchy, the president in a republic, or the governor in a state. — Also termed chief magistrate; first magistrate’). See also Opinion of the Justices No. 179, 275 Ala. 547, 549,156 So.2d 639, 641 (1963): ‘The laws of the state contemplate domestic peace. To breach that peace is to breach the law, and execution of the laws demands that peace be preserved. The governor is charged with the duty of taking care that the laws be executed and, as a necessary consequence, of taking care that the peace be preserved.’ ”
57 So.3d at 719 (emphasis omitted).
As we did in Cornerstone, we find noteworthy the opinion of the Supreme Court of Maine in State v. Simon, 149 Me. 256, 263-64, 99 A.2d 922, 925 (1953):
“ ‘The Governor of the State under our Constitution has the power to require information from any officer in the executive department. He has the duty to “take care that the laws be faithfully executed.” He is the head of the executive department. To carry out these great constitutional powers, in our view, everything pertaining to the executive department is at all times pending before the Governor in his official capacity.’ ”
57 So.3d at 719 (emphasis omitted). See also State ex rel. Stubbs v. Dawson, 86 Kan. 180, 187-88, 119 P. 360, 363 (1911): “It is manifest ... that the term ‘supreme executive power’ is something more than a verbal adornment of the office, and implies such power as will secure an efficient execution of the laws....”
We also note, as we did in Cornerstone, 57 So.3d at 720-22, portions of the analysis *847 of the Supreme Court of Mississippi in State v. McPhail, 182 Miss. 360, 374, 180 So. 387, 389-91 (1938):
“ ‘Section 123, Constitution 1890, provides that “The governor shall see that the laws are faithfully executed.”
[[Image here]]
[[Image here]]
“ ‘The constitutional and statutory provisions requiring the Governor to see that the laws are executed have no obscure or technical meaning; neither were they intended as a mere verbal adornment of his office. State v. Dawson, 86 Kan. 180, 187, 119 P. 360, 39 L.R.A., N.S., 993 [ (1911) ]. They mean what is in the ordinary import of the language used, to wit, that the laws shall be carried into effect, that they shall be enforced....
“ ‘A permeating feature in our State Constitution, and in all State Constitutions, is that primary local authority shall be preserved, so far as practically possible. The execution of civil and criminal process — the execution of the laws — was and is no exception to this structural rule. It was foreseen, however, by the framers of the Constitution that for one cause or another, local conditions would sometimes arise which would render the local authorities powerless to enforce the laws, or unwilling or afraid to do so. It was to meet such conditions, as one of its purposes, that the constitutional and statutory authority which we have above mentioned in respect to the execution of the laws was vested in the Governor. The Constitution makers did not leave any such loophole as to permit statutes enacted for general observance throughout the state to be set aside, or in practical effect repealed, in any particular section or area by the device of a failure or refusal of the local authorities to enforce such statutes.
“ ‘Thus and for the stated reason, the chief executive was given the authority and it was made his duty to act to enforce the laws, duly and constitutionally enacted, in every portion of the state, so that every citizen and all property would have the protection of the laws and that every criminal statute should be observed. Thus the power to enforce the laws is not left as a matter of finality to the discretion of the local authorities or the local inhabitants; but power was placed in the head of the executive department to act, in case of need, for the whole state. The Governor is an executive officer in every county of the state; and he may set the enforcement machinery in motion and thereby determine to whom the civil process may be directed for execution, when that has become proper on account of failure, neglect, or inability of the local executive officers to act. Every power at his command given by the Constitution and statutes may be brought into play so far as needed to effect the enforcement of the law....
“‘As was said by the court in Franks v. Smith, 142 Ky. 232, 134 S.W. 484, L.R.A. 1915A,1141, Ann. Cas. 1912D, 319 [ (1911) ]: “Primarily, the enforcement of the law is with the local civil authorities, but at times they are too weak to control the lawless elements that exist in every society, and at other times they might be in sympathy with the forces who want to take the law into their own hands. But, whatever the reason that may exist for the failure or inability of the local civil authorities to suppress violence and disorder, when it comes to pass that they cannot or will not do it then it is not only the right but the *848 plain duty of the Governor to act. Ours is a government of law. Under its authority and through its agencies alone wrongs must be redressed and rights protected. Unless this were so there would be no assurances of peace or quiet for the law-abiding and order-loving, who constitute so large a part of our people. The life and property of the citizen would be insecure, and the lawless, reckless, and violent would be at liberty to exercise at will their disregard of civil authority.” It will be noted that the above language was addressed to occasions of violence and disorder, but it applies as well to situations where there is a breakdown of the enforcement of the laws, although not attended by nature actual violence, or disorder of a violent nature.
[[Image here]]
“ ‘A fair measure of deference must be accorded to the local authorities, but when, as here, the Governor has sought by representations to, and requests of, the local authorities that the law be enforced, and they fail to do so; when then* failure becomes tantamount in substantial results to a refusal, or to no more than a futile pretense; when the condition exists and persists for that length of time which makes it clearly apparent that no dependence is to be placed upon the local executive officers and that they either cannot or will not enforce the laws, so that as respects all offenses of a certain class or classes, or as to any class or classes of civil process, there has been a substantial breakdown of local enforcement, then the power and duty of the Governor arises to send the executive agents with which the law has armed him.
(Emphasis omitted.)
After taking note of the aforesaid authorities in Cornerstone, we reviewed numerous statutes authorizing the governor to initiate or control litigation on behalf of the State. We then took particular note of Ala.Code 1975, § 12-17-184(10), which provides:
“It is the duty of every district attorney and assistant district attorney, within the circuit, county, or other territory for which he or she is elected or appointed:
[[Image here]]
“(10) To go to any place in the State of Alabama and prosecute any case or cases, or work with any grand jury, when called upon to do so by the Attorney General or the Governor of the State of Alabama, and to attend sessions of courts and transact all of the duties of the district attorney in the courts whenever called upon by the Attorney General or the Governor to do so.”
(Emphasis added.)[11]
We then concluded in Cornerstone as follows:
*849 “On their face, §§ 12-17-184(10) and -216, if not also § 36-18-2, authorize the governor to act as Governor Riley has in this case. Moreover, all statutes concerning the rights and powers of the governor must be read in the context provided by §§ 113 and 120 of the constitution. See City of Birmingham v. Emond, 229 Ala. 346, 349, 157 So. 64, 66 (1934) (applicable statutes considered in pari materia with pertinent constitutional provisions). Under the constitution, it is the governor who is the ‘chief magistrate’ with ‘the supreme executive power’ to ‘take care that the laws be faithfully executed.’ ”
57 So.3d at 726. As we thereafter observed:
“In the present case, Governor Riley concluded that the criminal law of Alabama regarding gambling devices and gambling enterprises had gone unenforced in certain counties and that, without action on his part and on the part of those he authorized to act, that law would continue to go unenforced in those counties during Attorney General King’s tenure. He employed certain officers placed at his disposal to enforce those laws with respect to machines and operations against which those statutes clearly were not being enforced, either by Attorney General King or by local law enforcement (including [the district attorney]).”[12]
57 So.3d at 729.
The statutes prescribing the authority and duties of the governor and the attorney general, district attorneys, and sheriffs[13] must be read in pari mate-ria with one another and, a fortiori, with the governing constitutional provisions. It is clear from a comparison of the constitutional and statutory provisions concerning the governor with the constitutional and statutory provisions concerning these other officials that the governor is the superi- or officer. Generally, where the governor is authorized to act he or she is not subject to any other executive officer. Further, those statutes that address the duties of district attorneys and sheriffs obviously have a large field of operation outside those rare cases where the governor finds it necessary to assert his or her authority. Thus, as we stated in Cornerstone with respect to the statutes governing the attorney general:
“It is not necessary to construe them as being in conflict with those constitutional and statutory provisions giving the governor the supreme executive authority and authorizing him to retain counsel and call upon district attorneys and supernumerary district attorneys, see, e.g., Decatur Lab., Inc. v. Sizemore, 564 So.2d 976, 977 (Ala.Civ.App.1990) (‘It is well settled that, where possible, statutes should be construed to be constitutional.’). Were we required to do so, any such conflict would have to be decided in favor of the governor and the constitution’s direct and explicit grant to him of the supreme executive power.”
57 So.3d at 733.
In Cornerstone, we explained that, even if we could conclude that the “scale” *850 otherwise tilted in favor of the statutes governing the attorney general and the district attorneys (and the same is true as to the statutes governing the sheriffs), we could not act on that conclusion there. As we stated in Cornerstone:
“The Governor has detei'mined that action on his part is necessary to take care that the laws are faithfully executed. If the governor’s ‘supreme executive power’ means anything, it means that when the governor makes a determination that the laws are not being faithfully executed, he can act using the legal means that are at his disposal.”
57 So.3d at 733.
Like Governor Riley’s argument in Cornerstone, Tyson’s argument in this case contains no suggestion of a bad-faith or other limitation on Governor Riley’s authority to determine that the law is going unenforced in an area for which another executive officer has responsibility and that reliance on the other executive officer, or any action taken by that officer, is insufficient to ensure that the laws of this State are faithfully executed. To decide this dispute between executive officials over their respective spheres of authority, however, it is not necessary for us to decide whether the governor’s discretion to make such a determination and to act upon it is “absolute” in relation to the other officials. For the same reasons we expressed in Cornerstone, “[w]e are clear to the conclusion that, at least under circumstances such as those presented here, Governor Riley acted consistently with his constitutional authority,” 57 So.3d at 734, in his employ of Tyson and other members of the Task Force. See Cornerstone, 57 So.3d at 704 (discussing Governor Riley’s position as to the term “bingo” in local constitutional amendments and discussing City of Piedmont v. Evans, 642 So.2d 435, 436 (Ala.1994); Foster v. State, 705 So.2d 534, 537-38 (Ala.Crim.App.1997); and Barrett v. State 705 So.2d 529, 531-32 (Ala.Crim.App.1996)).
As was true in Cornerstone, it is undisputed that for a substantial period before the Task Force was created in the spring of 2009, neither Attorney General King, nor District Attorney Jones, nor Sheriff Warren had engaged in any effort to enforce against the machines and operations in question the criminal statutes of this State prohibiting gambling devices and slot machines. We note that the circuit court in this case found that “the machines which underlie the investigation at issue in this case” have been in place for five years. The briefs and other materials before us likewise indicate that, since the creation of the Task Force and Governor Riley’s subsequent request that Tyson undertake certain duties with respect to the prosecution of cases involving such electronic-bingo machines, neither Attorney General King, nor District Attorney Jones, nor Sheriff Warren have attempted to enforce those statutes against the machines and operations in question.[14] It is only recently that District Attorney Jones has taken any action whatsoever, i.e., the filing of the declaratory-judgment action described earlier in this opinion. Under these circumstances, as was true in Cornerstone, “[w]e are unwilling to conclude *851 that Governor Riley cannot, without exceeding any discretion on his part,” employ Tyson and other members of the Task Force as he has. 57 So.3d at 735.[15]
As discussed in Cornerstone, Tyson is acting pursuant to the valid legal direction of Governor Riley. It is by that “warrant” that he seeks to pursue the enforcement of Alabama law prohibiting certain gambling activities and devices. He is not wrongfully usurping the offices of District Attorney Jones, Sheriff Warren, or Attorney General King. Under the circumstances, we see no likelihood of success in the Macon County plaintiffs’ quo warranto claim and therefore no basis for the issuance of in-junctive relief.[16]

The Mandamus Petition (case no. 1090939)

A writ of mandamus will issue where there is “(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.” Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995).
Tyson argues that the duties of Assistant District Attorney Tierney attendant to her appointment as counsel to the Task Force fall within § 12-17-184(10), which they do.
“It is the duty of .every district attorney and assistant district attorney, within the circuit, county, or other territory for which he or she is elected or appointed:
[[Image here]]
“(10) To go to any place in the State of Alabama and prosecute any case or cases, or work with any grand jury, when called upon to do so by the Attorney General or the Governor of the State of Alabama, and to attend sessions of courts and transact all of the duties of the district attorney in the courts whenever called upon by the Attorney General or the Governor to do so.”
One of the duties prescribed in § 12-17-184 is “[t]o prosecute and defend any civil action in the circuit court in the prosecu *852 tion or defense of which the state is interested.” § 12-17-184(3), Ala.Code 1975.[17]
Based on the foregoing, as well as the reasoning set forth in Cornerstone, it is clear that Assistant District Attorney Tier-ney may defend Tyson; the defense of Tyson’s authority to perform the duties he has been called upon by Governor Riley to perform is one in which the State has an interest.

Conclusion

The circuit court’s order issuing the preliminary injunction as to Tyson is reversed, and the cause is remanded to the circuit court for the entry of a judgment consistent with this opinion. The petition for a writ of mandamus as to the circuit court’s order disqualifying Assistant District Attorney Tierney from representing Tyson is granted, and the circuit court is directed to vacate that order.
1090878 — MOTION TO STRIKE TYSON’S BRIEF DENIED; REVERSED AND , REMANDED WITH DIRECTIONS.
1090939 — PETITION GRANTED; WRIT ISSUED.
COBB, C.J., and LYONS, WOODALL, STUART, SMITH, BOLIN, PARKER, and SHAW, JJ., concur.

. See Cornerstone, 57 So.3d at 731 (discussing appointments of Edgar W. Greene and Tim Morgan, both supernumerary district attorneys, as special prosecutors for and counsel to the Task Force).

. In an affidavit in support of the complaint in the present case, District Attorney Jones stated:
"The declaratory judgment action was initiated in compliance with the recommendations of the Attorney General for addressing the legality of electronic bingo in counties which have adopted constitutional amendments permitting the play of bingo.... I have exercised my prosecutorial discretion and have elected not to file any criminal charges against any operator of electronic bingo in Macon County at this time because, among other reasons, there has been no judicial construction of the meaning of the word 'bingo' as used in Amendment 744."

. The Macon County plaintiffs have filed a motion to strike Tyson's appellate brief in case no. 1090878 on the grounds that certain media reports attached as exhibits to that brief are not part of the record on appeal, that certain factual assertions contained in the brief are unsupported by the record, and that Tyson has failed to make adequate references to the record. In reaching our decision in this case, we have considered only the materials that are properly included in the record on appeal. We reject the contention that Tyson's brief so fails to substantially comply with the Alabama Rules of Appellate Procedure that it should be stricken, and we therefore deny the motion to strike.

. In part, Tyson argues:
"[A]ll the [Macon County] Plaintiffs have done here is split Victoryland's previously invalid action into two separate but equally invalid actions. Jones and Warren have filed (1) a declaratory judgment action in which they seek a determination of whether Victoryland's machines are legal and (2) this purported quo warranto action to enjoin the enforcement of the criminal law until that other action is complete. But, since this Court's decision in [Macon County Greyhound Park ] establishes that a declaratory judgment action cannot be used to enjoin a criminal investigation directly, surely the mere pendency of such an action cannot preclude a criminal investigation indirectly. Even though Jones’ declaratory-judgment complaint says '[t]his action does not request that this Court enjoin any criminal proceeding or prosecution,' that is exactly what the trial court has done in this case on account of the mere pendency of that action.”

.No attempt is made here, as it was in Macon County Greyhound Park, to determine the legality of certain conduct or devices by means of some action other than a criminal prosecution or a forfeiture under Ala.Code 1975, § 13A-12-30.

. Tyson also argued in the circuit court that a quo warranto action is not available to challenge how an official exercises the powers of his or her admitted office. This argument appears to have been properly rejected in that the gravamen of the petition for the writ of quo warranto is Tyson’s alleged usurpation of rights, authorities, or duties of the offices of District Attorney Jones and Sheriff Warren.
No argument is made in this case that in-junctive relief does not lie in aid of the quo warranto claim presented here. Compare, e.g., Spykerman v. Levy, 491 Pa. 470, 488, 421 A.2d 641, 650 (1980) (holding that the public interest requires the general performance of the duties of a public office pending the litigation, a concern not present here with respect to the offices of district attorney and sheriff of Macon County, and that the trial court "abused its discretion" by issuing an injunction that "cripplfed] the daily operations of the government”).

. Section 12-17-184(11) states, in its entirety:
"(11) All district attorneys and all full-time assistant district attorneys shall devote their entire time to the discharge of the duties of their respective offices, and each and every one of the officers are prohibited from practicing law, directly or indirectly, in any court of this state or of the United States, or in any other manner or form whatsoever, except in the discharge of the official duties of their offices.”

. Section 12-17-186(a) states:
"(a) The presiding judge of the circuit court, the district court or the municipal court, when the district attorney or assistant district attorney regularly required by law to prosecute criminal cases in such court is absent, or connected with the party against whom it is his duty to appear by consanguinity or affinity within the fourth degree, or when there is a vacancy in the office from any cause, or when the district attorney refuses to act, may appoint a competent attorney to act in such district attorney's place, but such appointment shall in no event extend beyond the session of the court at which the appointment is made."

. Specifically, as noted, we have before us the circumstance where the governor considers that gambling activity is occurring in Macon County and elsewhere that “no reasonable observer would assert in good faith” to be legal.

. See also § 138, Ala. Const.1901 (providing that a sheriff is to be elected for each county).
*846 Section 160(a), Ala. Const.1901, provides for the election, qualifications, and term of office of district attorneys. Although § 160 is contained within the constitutional provisions relating to the judicial department, "the district attorney is not a ... part of the judicial branch of government.” Dickerson v. State, 414 So.2d 998, 1008 (Ala.Crim.App.1982), abrogated. in part on other grounds by Ex parte Bohannon, 564 So.2d 854 (Ala.1988). "He is only an officer of the court to the extent that all attorneys are officers of the court.” 414 So.2d at 1008; see also, e.g., Beacom v. Board of County Comm'rs of Adams County, 657 P.2d 440, 445 (Colo.1983)("The district attorney, although elected from a judicial district as provided in Colo. Const. Art. VI, Sec. 13, is not a member of the judiciary. Rather, the district attorney is an executive officer of the state.”). As this Court has stated:
"In exposing and prosecuting crimes, district attorneys are members of the executive branch of state government. Dickerson v. State, 414 So.2d 998, 1008 (Ala.Crim.App.1982).... See, also, 63A Am.Jur.2d Prosecuting Attorneys § 24(1984):
[[Image here]]
" 'A prosecutor is not subject to judicial supervision in determining what charges to bring and how to draft accusatory pleadings; he is protected from judicial oversight by the doctrine of separation of powers.’ ”
Piggly Wiggly No. 208, Inc. v. Dutton, 601 So.2d 907, 910 (Ala.1992).

. We also took note of Ala.Code 1975, § 36-13-2, which states:
"Whenever, in his judgment, it is expedient or necessary, the Governor may employ an attorney or attorneys to advise him in his official capacity, or to institute, conduct or appear in any court or in any civil or criminal case in which the state is interested and to agree with such counsel on his compensation. ... The compensation of such counsel shall be paid ... out of such funds as are appropriated to the Governor’s office."
See also State ex rel. Troy v. Smith, 187 Ala. 411, 416, 65 So. 942, 943 (1914) ("It is thus seen that by [the language in what is now § 36-13-2] the Governor is empowered to employ ... an attorney or attorneys to advise him in his official capacity, as well as to institute, conduct, or appear in any civil or criminal case in which the state is interested, in any court....”).

. Elsewhere in Cornerstone, we noted, as we may here, that
"[w]e need not decide whether, in a dispute as here between the governor and another constitutional officer over their respective fields of authority, the other officer ever may defend his or her ‘turf’ on the ground that the governor’s determination that the other officer is not ‘faithfully executing’ the law is affected by bad faith or some comparable deficiency. As discussed below, that clearly is not the case here. See discussion infra."
57 So.3d at 722 n. 9.

. As to district attorneys, see Ala.Code 1975, §§ 12-17-184 and -185. As to sheriffs, see Ala.Code 1975, § 36-22-3.

. We also take cognizance of the number of cases that recently have been appealed to this Court and that concern disputes over the necessity for law-enforcement action with respect to so-called electronic or computerized "bingo” machines and related operations, see, e.g., Etowah Baptist Ass’n v. Entrekin, 45 So.3d 1266 (Ala.2010); Barber v. Houston County Econ. Dev. Ass'n, [Ms. 1090444] (pending on application for rehearing); Surles v. City of Ashville, [Ms. 1080826, Jan. 29,2010] (Ala.2010); and Barber v. Cornerstone Cmty. Outreach, Inc., 42 So.3d 65 (Ala.2009). *851 See also State v. McPhail, 182 Miss. 360, 374, 180 So. 387, 388-89 (1938).

. In addition to the arguments noted above, we also reject the other arguments made by the Macon County plaintiffs but not specifically addressed in Cornerstone. For example, they argue that Tyson's appointment by Governor Riley violates the Constitution of Alabama and statutory law because Tyson has not resigned his position as district attorney for Mobile County. The Macon County plaintiffs cite as support Ala. Const.1901, art. XVII, § 280, which provides that no person shall "hold two offices of profit at the one and the same time”; they also purport to rely upon Ala.Code 1975, § 36-2-l(b), the language of which tracks § 280. The circuit court made no finding concerning these allegations. These allegations, however, are without merit because the only public office of profit that Tyson holds is that of Mobile County District Attorney. The duties Tyson performs in response to Executive Order No. 44 and any amendments to that order are in fulfillment of his duties in that office pursuant to Ala.Code 1975, § 12-17-184(10). We also note that the duties Tyson performs in response to Executive Order No. 44 are performed without any pay beyond the pay he already receives as the Mobile County District Attorney. See Eagen v. State, 280 Ala. 438, 441, 194 So.2d 842, 844 (1967); see also Opinion of the Justices No. 194, 283 Ala. 341, 217 So.2d 53 (1968).

. We note that in Riley v. Hughes, 17 So.3d 643, 646 (Ala.2009), this Court stated:
"[T]he exclusive remedy to determine whether a party is usurping a public office is a quo warranto action pursuant to § 6-6-591, Ala.Code 1975, and not an action seeking a declaratory judgment. See Ex parte James, 684 So.2d 1315, 1317 (Ala.1996).... A declaratory-judgment action cannot be employed where quo warranto is the appropriate remedy because the declaratory judgment would violate public policy.”
(Footnote omitted.)

. In light of our discussion of § 36-15-1 in Cornerstone, see 57 So.3d at 713, we reject that statute as a proper basis for the circuit court's order in this case as to Tierney.